ANDERSON TRUST CO. *v.* AMERICAN LIFE INSURANCE CO.

1. EMINENT DOMAIN—PASSAGE OF TITLE—CONDITIONS PRECEDENT.
   Determination that it is necessary to take private property for public use and compensation made or secured are conditions precedent to the passage of the title or the taking of property under the power of eminent domain (Const. 1908, art. 13, § 1).

2. SAME—POSSESSION—TITLE—CONDITIONS PRECEDENT.
   Provisions of Constitution in article on eminent domain that private property shall not be taken without just compensation being first made or secured means more than that possession of the private property shall not be taken first but also contemplates that title shall not pass until there has been compliance with the conditions precedent (Const. 1908, art. 13, § 1).

3. PROPERTY—POSSESSION.
   The right to take possession of property is an incident to ownership.

4. MUNICIPAL CORPORATIONS—CONDEMNATION PROCEEDINGS—PASSAGE OF TITLE.
   Title of property condemned or the right of entry thereupon by city in the exercise of the power of eminent domain does

not pass to the city until the award therefor is paid or secured in the exact manner provided in the charter, or at least in substantial compliance therewith (Const. 1908, art. 13, § 1; 1 Comp. Laws 1929, § 3801; Detroit City Charter, title 8, chap. 1, § 16).

5. EMINENT DOMAIN—CONFIRMATION OF AWARD—PASSAGE OF TITLE.
While confirmation of an award in condemnation proceedings may to some extent impair or abridge certain of an owner's rights in property sought by a condemnor, title does not pass until payment of the award is made or secured (Const. 1908, art. 13, § 1; 1 Comp. Laws 1929, § 3801; Detroit City Charter, title 8, chap. 1, § 16).

6. SAME—MORTGAGES—REDEMPTION—SUBSEQUENT AWARD.
Second mortgagee whose rights were completely cut off by reason of failure of redemption before expiration of period allowed therefor from sale under decree of foreclosure of first mortgage was not entitled to share in award of condemnation proceedings where payment was first secured some months after expiration of such period, since title in fee had then passed to first mortgagee who had purchased property at sale (Const. 1908, art. 13, § 1; Comp. Laws 1929, §§ 3801, 14349; Detroit City Charter, title 8, chap. 1, § 16).

7. MORTGAGES—PURCHASER AT SALE UNDER DECREE OF FORECLOSURE.
Mortgagee who purchased property at sale under foreclosure held pursuant to decree would be entitled to entire award made in condemnation proceedings where payment was first made or secured after expiration of period of redemption from sale the same as though a third party had made the purchase (Const. 1908, art. 13, § 1; 1 Comp. Laws 1929, § 3801; Detroit City Charter, title 8, chap. 1, § 16).

8. EMINENT DOMAIN — MORTGAGES — REDEMPTION — DIVISION OF AWARD.
Although mortgage containing an assignment to mortgagee of any award which might be made in previously-instituted condemnation proceedings was foreclosed by first mortgagee, it would not be entitled to entire award by virtue thereof where it purchased premises at sale under decree of foreclosure, no redemption was effected, and payment of award was first secured after expiration of period of redemption, hence second mortgagee was not entitled to have any portion of the award (Const. 1908, art. 13, § 1; Comp. Laws 1929, §§ 3801, 14349; Detroit City Charter, title 8, chap. 1, § 16).

9. Mortgages—Assignment of Award in Condemnation Proceedings—Release—Payment.

Where mortgage described entire tract of land, decree of foreclosure thereof contained a like description, assignment therein to mortgagee of any award which might be made in previously instituted condemnation proceedings for street widening purposes would not constitute a separate and second security for payment of the mortgage debt nor did award made for portion of premises release another portion of premises from mortgage obligation under mortgage provision where payment of award was first secured after expiration of period of redemption from sale under decree of foreclosure as payment of award did not then constitute payment on mortgage (Const. 1908, art. 13, § 1; 1 Comp. Laws 1929, § 3801; Detroit City Charter, title 8, chap. 1, § 16).

10. Appeal and Error—Questions Reviewable—Mortgages—Condemnation Proceedings.

On appeal in suit by second mortgagee against first mortgagee and city for portion of award paid by city to first mortgagee in condemnation proceedings for portion of premises, contention that city was liable to plaintiff for payment of portion claimed by it is not considered where first mortagee was found entitled to entire award (3 Comp. Laws 1929, § 14349).

Appeal from Wayne; Toms (Robert M.), J. Submitted June 5, 1942. (Docket No. 25, Calendar No. 42,012.) Decided September 8, 1942. Rehearing denied October 21, 1942.

Bill by Anderson Trust Company, an Indiana corporation, against American Life Insurance Company, a Michigan corporation, and others for an accounting of money received on condemnation proceedings. Decree for plaintiff. Defendants American Life Insurance Company and City of Detroit appeal. Reversed and bill dismissed.

*Herbert M. Weil* and *Butzel, Levin & Winston,* for plaintiff.

*Butzel, Eaman, Long, Gust & Bills (Thomas G. Long* and *David A. Howell,* of counsel), for defendant Life Insurance Company.

*Paul E. Krause,* Corporation Counsel, and *James H. Lee,* Assistant Corporation Counsel, for defendant City of Detroit.

*Shields, Ballard, Jennings & Taber,* of counsel, for appellants.

North, J.    Plaintiff filed a bill in chancery for relief under 3 Comp. Laws 1929, § 14349 (Stat. Ann. § 27.1117), which in part provides that upon foreclosure of a mortgage by bill in chancery wherein personal service is not obtained "such defendant or his representatives may, at any time within seven years after the decree ordering such sale, file a bill against plaintiff or his representatives, to account for all moneys received by him or them by virtue of such decree over and above the amount justly due on the mortgage, and costs of suit; and the court shall proceed on such bill, according to the equity of the case." After issue was framed and upon hearing on the merits, plaintiff had a decree for $57,702.96. The defendants, American Life Insurance Company and City of Detroit, have appealed.

In 1928 George Simons was the fee owner of property in the city of Detroit having a 57-foot frontage on Woodward avenue and extending easterly through to John R. street, there being an intervening alley between the two streets. In July, 1928, Simons gave a first mortgage on the property to the American Life Insurance Company for $130,000. He also gave a second mortgage on the property for $72,500 to plaintiff as trustee to secure payment of outstanding notes in that amount. The second mortgage obligation has not been paid. There was

default under the first mortgage, and it was foreclosed by a chancery decree entered December 20, 1932. At the foreclosure sale on February 10, 1933, the mortgagee purchased for $130,000. This resulted in a deficiency of $18,302.81 for which decree was taken. Plaintiff herein, a foreign corporation, was made a party defendant in the foreclosure proceedings. Personal service was not obtained on this defendant and it did not enter its appearance in the foreclosure case. However, substituted service was obtained, and its default entered.

Condemnation proceedings had been commenced by the city of Detroit for the widening of Woodward avenue on November 17, 1927, which was approximately eight months prior to the taking of the mortgage on these premises by the American Life Insurance Company. Seemingly in anticipation of payment being made for a portion of the mortgaged property which might be taken in the condemnation proceedings during the life of this mortgage, it provided:

"It is further stipulated and agreed that if said property, or any portion thereof, is taken by condemnation proceedings, that all of the proceeds of whatever award may be made in such condemnation proceedings shall belong to and be paid to said American Life Insurance Company, and credited on the principal of said mortgage, and all of the proceeds of any such condemnation proceedings is hereby assigned to said American Life Insurance Company."

On February 16, 1932, a jury by its verdict fixed the award for damages for taking a part of the mortgaged property at $67,936.58. The award was confirmed July 21, 1932. It was subsequent to the last-mentioned date that the American Life Insur-

ance Company took its decree of foreclosure. The Detroit city charter, title 8, chap. 1, § 16, gives the city council one year after condemnation to "set apart and cause to be provided in the treasury" the amount required to make compensation and when the necessary sum "*is actually in the treasury,*" the city treasurer is required to make and sign in duplicate certificates to that effect, and the city may then "enter upon and take possession of and use" the condemned property. The city failed to comply with the above provision within the year limitation; but subsequently and on December 5, 1934, funds were set aside to satisfy this award, and later the award, less delinquent taxes and the amount of a lien on the condemnation award hereinafter noted, was paid with accrued interest to the American Life Insurance Company. Such payment was made on December 24, 1934. The period of redemption from the mortgage foreclosure had expired on August 10, 1933, subject to a moratorium which terminated March 19, 1934.

In the mortgage foreclosure decree of December 20, 1932, the court took cognizance of the condemnation suit and recited in the decree that a part of the premises had been "condemned and taken in said condemnation proceedings by the said city of Detroit" and an award of $67,936.58 had been confirmed; and the court thereupon decreed that subject to a $1,875 lien of certain interveners for legal services in the condemnation proceedings, the insurance company should be "solely entitled to all of the balance of said award."

Briefly stated, it is plaintiff's theory and contention that since the total of $130,000 paid by the American Life Insurance Company for the property at the mortgage foreclosure sale plus the amount

received by the insurance company from the condemnation proceedings exceeded by a substantial amount the total sum which accrued under the American Life Insurance Company's mortgage and the cost of foreclosure, plaintiff is entitled to an accounting for this excess under the statute hereinbefore quoted.

Among other claims asserted by the American Life Insurance Company in its defense, it urges that plaintiff cannot rightfully claim any interest in or right to the condemnation award because at the time title to the condemned property passed to the city of Detroit plaintiff's interest as the holder of a second mortgage had been wholly terminated by the foreclosure proceedings and the prior expiration of the period of redemption. In short, the claim is that at the time title to the condemned property passed to the city, the American Life Insurance Company was the sole owner of the property for which the award was paid, that plaintiff had no interest therein, and that therefore plaintiff cannot successfully assert a claim to the award paid or any portion thereof. If this contention is sound, the decree entered in the circuit court must be reversed.

As against the contention of the American Life Insurance Company just above noted, plaintiff asserts that title to the condemned property became vested in the city as condemnor *at the time the award was confirmed,* July 21, 1932; and that since the foreclosure of the American Life Insurance Company mortgage had not then been decreed, plaintiff had and now has a right to have applied in payment upon its then past-due second mortgage whatever residue remained of the award after sufficient was taken therefrom, together with the $130,000 subsequently bid by the mortgagee at the

mortgage sale, to satisfy the amount due on the American Life Insurance Company's mortgage and the cost of foreclosing same.

The conflicting contentions of the respective parties squarely present the question of law as to when title passes in condemnation proceedings under the law governing this case. Does it pass at the time the award is confirmed or at the time payment of the award is made or secured in manner provided by law? Article 13, § 1, of the Michigan Constitution (1908) provides:

"Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law."

The Detroit city charter contains provisions in substantial accord with 1 Comp. Laws 1929, § 3801 (Stat. Ann. § 8.58). In part the city charter provides:

"Within one year after confirmation of the verdict of the jury, or after the judgment of confirmation shall on appeal be confirmed, the council shall set apart and cause to be provided in the treasury, unless already provided, the amount required to make compensation to the owners and persons interested for the private property taken as awarded by jury. * * * And it shall be the duty of the treasurer to securely hold such money in the treasury for the purpose of paying for the property taken, and paying the same to the persons entitled thereto, according to the verdict of the jury, on demand, and not pay out the money for any other purpose whatever. * * * Whenever the necessary sum is actually in the treasury for such purpose, the treasurer shall make and sign duplicate certificates, verified by his

oath, showing that the amount of compensation awarded by the jury is actually in the treasury for such purpose * * * and shall cause one of the certificates to be filed in the office of the clerk of the court in which the proceedings were had and the other to be filed with the city clerk, which certificate shall be prima facie evidence of the matters herein stated. Whenever the amount of the compensation is in the treasury and thus secured to be paid, the council may enter upon and take possession of and use such private property." Detroit city charter, title 8, chap. 1, § 16.

And it is further provided in the same section of the city charter that in case of resistance or refusal to permit the condemnor to take possession of the private property condemned, "at any time after the amount of the compensation aforesaid is actually in the treasury ready to be paid" the condemnor may apply to the court for a writ of assistance "to put the city in possession of the property."

The specific question of law under consideration has not been passed upon in this State in any case wherein it was controlling of decision.

"Whether title passes on confirmation of the judgment in condemnation by public bodies or not until deposit or payment of the award, in the absence of express provision of the statute, does not seem to be entirely free from controversy in this State." *Cleaver v. Board of Education of City of Detroit,* 263 Mich. 301.

In an earlier case we said:

"The language of the constitutional provision and of the statute is plain and unambiguous. There can be no actual taking until the necessity therefor is first determined and compensation made or secured by placing it in the city treasury. *In this State*

*these are conditions precedent to the passing of the title or the taking of the property.''* Belawski v. Union Trust Co., 240 Mich. 429.

While seemingly not indispensable to decision, still it may be noted that in other of our decisions statements will be found which are in full accord with the italicized part of the above quotation from the *Belawski Case.* See *Rosen* v. *City of Detroit,* 242 Mich. 690; *Burke* v. *City of River Rouge,* 240 Mich. 12; and *Campau* v. *City of Detroit,* 225 Mich. 519 (32 A. L. R. 91). In the last-cited case at page 531, Justice STEERE in referring to the condemnation award said:

"The amount of defendant's indebtedness for the land it compelled plaintiff to sell was as finally and forcibly determined as by any other judgment. *Its* (the city's) *absolute right and title to the property only awaited payment of a judgment.''*

We think that the constitutional provision, "private property shall not be taken'' means more than that possession of private property shall not be taken. It means that the title to private property shall not pass (which alone would give the right to take possession) "without * * * just compensation being *first* made or secured in such manner as shall be prescribed by law.'' It would be rather strange and illogical to conclude, as plaintiff herein asserts, that title to condemned property passes as of the date of confirmation of award, notwithstanding it seems to be conceded that the law specifically forbids the condemnor from exercising the important right incident to ownership—the right to take possession—until just compensation is first made or secured.

It will be noted from the above-quoted constitutional provision, containing the words "as shall be

prescribed by law;'' that the framers of the Constitution contemplated a more detailed provision of law as to the determination of necessity and making or securing just compensation for the property taken. The provision of law controlling in the instant case as to making or securing just compensation is the above-quoted provision from the Detroit city charter. This charter provision and the like statutory provision hereinbefore cited supplement the constitutional provision. By the charter provision (as well as the statutory provision) it is plainly provided that the city as condemnor may not enter upon and take possession of or use private property until payment of the condemnation award is made or secured. And plainly the charter provision requires that the actual money (not the credit of the city) shall be provided and earmarked for payment of the specific award before the city can exercise any of the so-called property rights in the condemned premises. In the light of this charter provision, we are unable to reach any other conclusion than that under the law title to the condemned property does not pass to the condemnor until the award is paid or secured in the exact manner provided in the charter, or at least in substantial compliance therewith.

We find little, if any, guidance in decisions from other jurisdictions cited in appellee's briefs, for the reason that none of the cited cases are concerned with a like constitutional provision supplemented by a like charter or statutory provision. Nor do we think decision herein should be controlled by the somewhat inaccurate language in many of the decisions as to what constitutes ''the taking of property'' or the time in condemnation proceedings when the inaccurately denominated ''taking'' occurred. Regardless of when it may have been said there was a

"taking" of property in condemnation brought under other and different provisions of law, when the proceeding is brought under the constitutional and charter provisions here involved, there seems to be no room to hold that the property owner is divested of his title to the land prior to the time the award is paid or secured. Confirmation of an award may and obviously does to some extent impair or abridge certain of the owner's rights in the property sought by the condemnor; but under the provisions of law which control the instant case, title does not pass until payment of the award is made or secured. In *Belawski* v. *Union Trust Co., supra,* we said: "Compensation made or secured by placing it in the city treasury" is a condition precedent to the passing of title.

A comparatively recent case decided by the supreme court of Minnesota is similar to the instant case in that the time when title vested in the condemnor was controlled by a charter provision. We quote:

"It is urged that the charter provides that title to the property shall vest in the city upon confirmation by the council of the assessment, before compensation is paid or secured. Laws 1921, p. 270, chap. 219, modifies the charter in that regard. * * * It does provide that when an award is not appealed from or is confirmed by the court, 'the city council shall thereupon cause to be paid from the funds of such city, to the owner of such property, the amount awarded to each severally,' and 'upon the payment of said award * * * or the setting apart of the money in the city treasury to pay the same * * * the city shall become vested with the title to the property.' * * * Under the Constitution and this chapter there can be no vesting of any title to the property in the city until compensation is paid or secured." *In re Improvement of Third*

*St., St. Paul,* 177 Minn. 146, 157 (225 N. W. 86, 74 A. L. R. 561).

*Bauman* v. *Ross,* 167 U. S. 548, 598 (17 Sup. Ct. 966, 42 L. Ed. 270), is a case of like purport and the court therein said:

"And by section 18 (Chap. 197, 27 Stat. at L. 537), as soon as the damages have been assessed *and paid,* the commissioners are to take immediate possession of the land; but if congress, during six months of its session, omits to make the necessary appropriation, the proceedings are to be void, and the lands to belong to the owners.

"Under the Constitution, and by the express provision of section 18 of this act, the United States are not entitled to possession of the land until the damages have been assessed and actually paid. The payment of the damages to the owner of the land and the vesting of the title in the United States are to be contemporaneous.  *  *  *

"The (statutory) phrase 'and the land shall revert to the owners,' is not happily chosen, for, the damages not having been paid, the title in the land has never passed out of them; but the clear meaning is that the title to the land shall be held to have remained in the owners as if no proceedings for condemnation had been had."

Numerous decisions are cited in the notes accompanying the text of 18 Am. Jur. § 305, p. 951, which we quote in part:

"A Constitution providing that property shall not be taken for public use 'without just compensation first made therefor' requires actual payment of compensation before the owner's title is divested.  *  *  *  But where a city has complied with every requisite necessary for it to provide money with which to pay compensation for the property condemned, the question whether it actually had in its

hands such money at the time of the jury's award is immaterial, because title remains in the owner unless and until the award has been paid or the money actually tendered. * * * Under a provision requiring payment in advance, such a payment is a condition precedent to both the vesting of title to lands taken for public use or of any right of entry.''

We conclude that, under the charter provisions (as well as the statute) under which the Woodward avenue condemnation proceedings were prosecuted, title to the mortgaged property which the city of Detroit condemned did not pass from the owner to the city until December, 1934, when payment of the award was first secured. Prior thereto the American Life Insurance Company had acquired complete title in fee to the property and all of plaintiff's rights as mortgagee under its second mortgage had been cut off by foreclosure of the first mortgage and the expiration of the period of redemption on August 10, 1933. When title passed to the city, plaintiff herein had no interest or right in the condemned property, and therefore was not entitled to any portion of the award paid therefor. *Belawski* v. *Union Trust Co., supra.* In law this aspect of the case is the same as though a third party, instead of the mortgagee, had purchased at the foreclosure sale all of the mortgaged property and after expiration of the redemption period the city had exercised its right to pay the condemnation award and take the condemned portion of the property which had been purchased by such third party. Clearly such purchaser would have been entitled to the award as against any other of the parties who had an interest in the mortgaged property prior to foreclosure.

In the instant case the American Life Insurance Company did not become possessed of the right to the condemnation award through the so-called assign-

ment provision in its mortgage nor through the foreclosure of its mortgage, except indirectly or incidentally. Instead, it acquired, upon expiration of the period of redemption, title to all of the mortgaged property. Thereafter, when title to the condemned portion of the property passed to the city upon its securing payment of the award as required by the city charter, the city acquired property to which the sole title was then in the American Life Insurance Company; and it follows that the award belonged solely to the insurance company.

We are not in accord with plaintiff's contention that the provision in the American Life Insurance Company's mortgage as to the rights of the mortgagee in the condemnation award constituted that award a separate and *second* security for the payment of the mortgage debt. The mortgage by its express terms covered the entire tract of land to which the mortgagor held the title in fee. At the time the mortgage was given, the condemnation proceedings had not progressed to a point of final determination; but at that time and thereafter it was within the power of the city to discontinue the condemnation proceedings. The obvious purpose of the provision as to rights in the award was to eliminate a possible subsequent controversy between any of the parties having an interest at that time in the property of which condemnation was being sought; and not for the purpose of making any contingent future award a separate and independent security for the payment of the mortgage debt. Appellee in a reply brief states: ''The assignment of the award to the mortgagee was included in the mortgage in this case to avoid this consequence,'' of uncertainty with respect to the extent of the right of the mortgagee to participate in the condemnation award. The decree entered in the foreclosure case providing for

foreclosure of the mortgage lien and sale of the mortgaged property described the property in full. It made no reference to the award as a separate security. Under the facts and circumstances of this record, it cannot be held that the award was a separate and independent security; or that it constituted a payment upon the mortgage in such an amount that the portion of the mortgaged property facing on John R. street should have been released · from the mortgage lien under the following provision in the mortgage:

"That portion of the property east of the alley and facing John R. street to be released on the payment of $50,000 to be credited on the principal of this mortgage."

The undisputed fact is that no sum of money was paid on the award or secured at any time during the life of the mortgage or within the period of redemption. Hence there was no payment made on the mortgage. Instead the award was paid after the American Life Insurance Company had become the sole and absolute owner of the mortgaged property, and after the rights and interests of all other parties to the foreclosure suit in the mortgaged property had been fully and finally terminated.

For the purpose of clarity, it may be noted that the city of Detroit was made a party defendant herein on plaintiff's theory that the city wrongfully paid to the American Life Insurance Company the portion of the award for which plaintiff had decree in the circuit court; and that therefore, if plaintiff fails to recover from the insurance company, the city would still be liable to plaintiff for the payment of the amount it claims, notwithstanding it had already paid the award in full to the American Life Insurance Company. It was so decreed in the cir-

cuit court. In view of our decision, plaintiff's contention need not be considered; nor is it necessary to give consideration to the conflicting contentions of the respective parties as to whether the equities of the case are such as under the statute entitle plaintiff to relief. Other defendants have no interest in the appeal.

A decree will be entered in this Court dismissing plaintiff's bill of complaint as to the appellants, and they will have costs of both courts.

CHANDLER, C. J., and BOYLES, STARR, and SHARPE, JJ., concurred with NORTH, J. BUSHNELL, J., concurred in the result. WIEST and BUTZEL, JJ., did not sit.