## STATE HIGHWAY COMMISSIONER *v.* NEWSTEAD.

1. NOTICE—POSSESSION—HIGHWAYS.
   Occupancy by public authority of westerly 16-1/2 feet of sub-division lot for pavement, widening and sidewalk construction would constitute notice of proceedings for such purpose but, in the absence of physical possession of easterly 8-1/2 feet of such lot by the State there would be no notice by possession of any claim thereto by the State to such easterly portion.

2. HIGHWAYS AND STREETS—NECESSITY.
   State highway commissioner's claim in suit to enjoin permanent construction on 8-1/2 foot strip of lot on which defendants were erecting part of a building, also covering adjoining lot, failed to show necessity for traffic safety, where abutting portion of highway to the west of the lot in question was used for northbound traffic only and 10-foot strip of land between the lot and the pavement was sufficient to round out the corner.

3. EMINENT DOMAIN—COMPENSATION.
   Private property may not be taken for public use without compensation therefor being first made or secured in such manner as shall be prescribed by law (Const 1908, art 13, § 1).

4. SAME—AWARD—LAND CONTRACT.
   An award in condemnation proceedings for the taking of property which had theretofore been sold on an executory land contract should be paid first to the vendor and applied on the unpaid balance of the contract as the right to collect the compensation does not pass to the purchaser unless specially assigned.

REFERENCES FOR POINTS IN HEADNOTES
[1]  39 Am Jur, Notice and Notices § 18.
[2]  25 Am Jur, Highways § 324.
[3, 5, 9]  18 Am Jur, Eminent Domain § 305.
[6, 7]  18 Am Jur, Eminent Domain § 319.
[6, 9]  18 Am Jur, Eminent Domain § 322.
[10]  49 Am Jur, States, Territories, and Dependencies §§ 91, 96.

5. Same—Title—Compensation to Owner.

> Condemnation proceedings were fatally defective as to defendants' property upon which they were enjoined from erecting a building at suit of plaintiff State highway commissioner in that latter had never acquired title thereto by due process of law, since no compensation had ever been paid or secured to the then owner of the property as required by statute (PA 1925, No 352, as amended by PA 1927, No 92).

6. Same—Title—Determination of Necessity.

> Condemnation proceedings had were ineffective to pass title to property, where condemnor made no attempt to ascertain who was the owner of the record title, determination of necessity incorrectly stated that the owners were unknown and value was stated to be $1 (CL 1929, § 3887).

7. Same — Determination of Necessity — Good-Faith Effort to Purchase.

> A good-faith effort to purchase is a condition to a valid determination of necessity under the highway condemnation statute (CL 1929, § 3887).

8. Same—Nature of Condemnation Proceedings—Review.

> Proceedings to condemn land are special and summary in character and, while subject to judicial review and supervision for certain purposes, are not judicial proceedings.

9. Same—Title—Notice—Compensation.

> Title to property did not pass by condemnation proceedings for a highway in which the owner was neither notified of the proceedings nor paid for the land taken (CL 1929, § 3887).

10. Appeal and Error — Jurisdiction — Damages — State—Immunity from Suit—Waiver.

> Whether or not trial court was correct in retaining jurisdiction to determine damages caused defendants by reason of fact that plaintiff State highway commissioner sought an injunction against their construction on land which plaintiff's predecessor had ineffectively condemned is not determined, where· State's immunity from suit in such particular has not been waived but neither decree nor judgment has been rendered against State or plaintiff in his representative capacity and an appeal therefrom would be available should one be rendered.

Appeal from Oakland; Doty (Frank L.), J. · Submitted April 9, 1953. (Docket No. 38, Calendar No. 45,701.) Decided June 22, 1953.

Bill by Charles M. Ziegler, as State Highway Commissioner of the State of Michigan, against Cecil C. Newstead and wife to restrain defendants from building on certain described premises. Cross bill by defendants against plaintiff to quiet title to real estate and for damages. City of Pontiac intervenes as a plaintiff. Decree for defendants. Plaintiff appeals. Affirmed.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Eugene F. Townsend,* Assistant Attorney General, for plaintiff.

*William E. Ewart,* for intervenor.

*Glenn C. Gillespie* and *Verne C. Hampton,* for defendants.

BUTZEL, J. Charles M. Ziegler, as State highway commissioner of the State of Michigan, plaintiff, brought suit to restrain Cecil C. Newstead and Verna Newstead, his wife, defendants, from building on lot 11, Indian Village subdivision of part of the southwest quarter of section 30, T3N, R10E, Pontiac township, Oakland county, Michigan. Only the easterly 8-1/2 feet of lot 11 is involved in this suit, defendants not claiming any interest in the westerly 16-1/2 feet of the lot. In their cross bill they ask that title to this easterly 8-1/2 feet be quieted in them, that they be decreed to be the owners, and that they be awarded damages they claim to have suffered through the beginning of this suit and the temporary restraining order issued, which has delayed the completion of a partially-constructed building they are erecting on the easterly 8-1/2 feet of lot 11 and the adjoining lot 10. The city of Pontiac has intervened as party plaintiff, but we shall refer only to the State highway commissioner as plaintiff.

The property in 1927 had already become part of the city of Pontiac, Michigan.

Indian Village subdivision was platted in 1924. Lot 11 is located at the northeast corner of West Huron street, running east and west, and West boulevard, running north and south, and now known as US-24 or Telegraph road. We shall refer to it by the latter name. As platted, lot 11 had a frontage of 95 feet on Telegraph road and 25 feet on West Huron street. Lot 10, which is 20 feet wide, adjoins the easterly line of lot 11 and has a frontage of 20 feet on West Huron street.

Over 24 years prior to the beginning of this suit, the State highway commissioner then in office made a determination of necessity, dated August 30, 1927, to condemn "a part of property" for public highway purposes in constructing the necessary grade and drainage structures and surfacing to a width of 20 feet with concrete. The determination stated that the commissioner had been unable to agree with the owners and persons interested therein as to the damages which should be paid for the taking. It described 20 different descriptions of land, including parcel No 5, consisting of lot 11, Indian Village subdivision, and stated *"owner-unknown," "estimated damages—$1."* Proceedings in the probate court followed in accordance with PA 1925, No 352, as amended by PA 1927, No 92, effective April 30, 1927 (CL 1929, § 3884 *et seq.*).[*] Upon the due filing of the petition, the probate court ordered a hearing of the petition, that notice thereof be published twice within 15 days prior to such hearing, and that notice be sent to each absent or nonresident person named in the order, which also repeated the statement as to lot 11, *"owner-unknown," "estimated damages—*

---

[*] In its more recently amended form, see CL 1948, § 213.171 *et seq.* (Stat Ann 1951 Cum Supp § 8.171 *et seq.*).

*$1."** A notice of *lis pendens* was recorded in the office of the register of deeds of Oakland county on January 28, 1928, over 2 months after proceedings in the probate court had been begun. In the notice of *lis pendens,* it was stated that court commissioners had been appointed to appraise the damages for the taking of "a part of private property," the land affected being described as lots 10 and 11 of Indian Village subdivision. This notice further stated that the property was owned by "Harry and Rubin Grevnin," although they never were the owners.

At the time the proceedings were begun, the title to lot 11, as shown by the public records in the office of the register of deeds for Oakland county, Michigan, was solely in the Union Trust Company, a Michigan corporation of Detroit, Michigan. According to the corporation's annual report, duly filed with the State on September 7, 1927, its correct address is given. The Union Trust Company had sold lots 10 and 11 to William Othmer and wife, then of Detroit, Michigan, on a land contract which was never recorded. On November 29, 1926, the Othmers had entered into an executory contract for the sale of lots 10 and 11 to the Grevnins. This land contract was not recorded until November 19, 1931, long after the condemnation proceedings hereinabove described. The record does not show that a copy of the order was mailed to the Union Trust Company, nor would it be probable that there was such mailing as the order itself described the owner as "unknown." The determination of necessity further stated that the highway commissioner had been unable to agree with persons interested as owners, or otherwise, as to damages to be paid as compensation although it is quite obvious that there could be no attempt to come to an agreement with "unknown owners," notwithstanding the fact that the Union

---

* Emphasis throughout opinion supplied.

Trust Company appeared as the sole owner of record.

The Grevnins, according to their contract, which was really a subcontract from the Othmers for the purchase of lots 10 and 11, agreed to pay $7,500 with a $1,400 down payment, leaving a balance of $6,100. Although they agreed to pay $300 every 6 months, together with interest, at the time the former highway commissioner made his determination of necessity on August 30, 1927, they already were in default in their payments and owed $5,983 on the principal. Notwithstanding this fact, and further, that the record title was solely in the Union Trust Company, on September 21, 1928, the sum of $5,156.25 was paid to the Grevnins for the taking of lot 11. As far as the record shows, nothing whatsoever was paid to the Union Trust Company or to the Othmers. The Grevnins made a few payments thereafter, as they were purchasing both lots 10 and 11. A few years later the Othmers recovered possession from the Grevnins through proceedings before the circuit court commissioner of Oakland county. The Grevnin contract was not recorded until 1931, shortly before the proceedings were begun before the circuit court commissioner. The record is barren of other facts as to what occurred at the time of the condemnation proceedings, but the Grevnin contract indicates that they not only were in default in payments due on their contract but had not yet paid even a third of the agreed purchase price when they received the entire condemnation award of $5,156.25. They owed far more than this amount to the Othmers, who in turn still owed some amount on their contract with the Union Trust Company. The record thus indicates that the $5,156.25 was paid to the Grevnins who kept it although they were not even remotely entitled to it.

A large advertising sign covered a large part of the 8-1/2 feet in dispute when the condemnation proceedings were begun. In 1928, the State constructed a 20-foot roadway with a curb, east of which there was left a plot of earth 5 feet wide, east of which a sidewalk approximately 5 feet wide was built. About 1931 or 1932, Othmer built a lunch stand on the property in question. The Othmers paid up their contract and in 1939 secured a deed for the property from the successor of the Union Trust Company, subject to any acts of others than the grantor. The Othmers in turn gave a deed to third parties, who deeded the premises to defendants Newstead and wife. In 1951, or thereabouts, defendant Newstead removed the lunch stand and began the erection of a cement block and brick building, the construction of which was halted by the present suit.

During the 24 years that elapsed prior to the beginning of this suit, neither the city nor the State took physical possession of the 8-1/2 feet. There was some improvement on the 8-1/2 feet continuously for almost the entire 24 years. The city of Pontiac from time to time issued 6 different permits to build on the 8-1/2 feet. During all these years the 8-1/2 feet were assessed for city, county and school taxes up to and including 1951. In 1947, a special assessment of $209.37 was levied against the property for paving Telegraph road. The Othmers and their successors in title promptly paid all taxes and assessments. It is true that the Othmers and their successors in title must, or should, have known because of the paving, widening and sidewalk construction in 1928, that there had been some kind of proceedings, for all of lot 11 except the easterly 8-1/2 feet thereof had been taken for the road and sidewalk and the 5-foot strip between the curb and the sidewalk. Nevertheless, there was no notice through physical possession of any claim by the State to the

easterly 8-1/2 feet. The Othmers and those claiming under them and the Othmers' successors in title continued to use the 8-1/2 feet. At no time was it used for street purposes. No direct notice of the proceedings, as far as the record shows, was ever given to the Union Trust Company, the Othmers, or even the lessees of the land for sign purposes. It would not be apparent from all these facts that the State made any claim to the 8-1/2 feet. The bank made mortgage loans on the 8-1/2 feet and adjoining property. The Abstract & Title Guaranty Company guaranteed the title. William Othmer died just prior to the hearing of the instant case, so we have not the benefit of his testimony as to why he did not take any action when he learned the State had improved the highway by taking 16-1/2 feet of his property. We cannot indulge in conjecture. The State has occupied the westerly 16-1/2 feet of lot 11 since 1928 for highway purposes and defendants make no claim to it.

In plaintiff's bill of complaint it is claimed that the State requires the easterly 8-1/2 feet of lot 11 for the safety of the traffic at an important intersection. It was shown, however, that Telegraph road is divided into 2 wide lanes, with narrow islands interspersed between them, thus separating the traffic. The easterly lane is used exclusively for northbound traffic and the westerly lane for southbound traffic. Drivers of automobiles going in a westerly direction on West Huron street could look to the south and readily see all traffic proceeding north on Telegraph road. They would have no reason whatsoever to apprehend that any cars would proceed in a southerly direction on the easterly side of Telegraph road. The photographic exhibits further show that the intersection of Telegraph road is protected by 2 traffic lights. Plaintiff claims that it may be advisable or necessary to round out the

corner, but there is no reason why this could not be done as there is a strip of land 5 feet wide and a 5-foot sidewalk adjoining the 8-1/2 feet in dispute.

The trial judge held that the condemnation proceedings were fatally defective and that plaintiff never acquired title to the 8-1/2 feet by due process of law. He based his decision largely on the fact that no compensation was ever paid or secured to the owner of the property, as provided for in PA 1925, No 352, as amended by PA 1927, No 92, *supra.* He called attention to the fact that the records in the office of the register of deeds showed the Union Trust Company of Detroit to be the fee owner of the lot; that it had previously been sold on land contract to the Othmers, who had leased it to the Walker Sign Company, which at the time maintained a large billboard on the premises and on the adjoining lot 10; that, despite these facts both the commissioner's determination of necessity and his petition in the probate court, the owner of lot 11 was alleged to be unknown. He quoted the Constitution (1908), article 13, § 1, which prohibits the taking of private property for public use without compensation therefor being first made or secured in such manner as shall be prescribed by law. He stated that under the well-settled law the amount of the award should have been paid to the Union Trust Company, the owner of the fee, being first applied upon the balance due on the Othmer land contract. He called attention to *State Highway Commissioner* v. *Gibson,* 308 Mich 276, where we said:

"The trial court held that the vendors were entitled to the entire amount of the awards subject to the right of the vendee to have the amount of the awards applied upon the balance due on the contracts as of the time of payment of the awards. The trial court came to the correct conclusion. It was an equitable result. If the vendee elects to continue

making his payments on the contracts, he has not been harmed as he will be given credit for the amount of the awards, or if a judgment for possession is given to the vendors, then the vendors will be compensated for their loss of security."

He also quoted the rule in 18 Am Jur, p 864, as follows:

"If title vests in the condemnor before the property is conveyed (by vendor as record owner) the award should be paid to the vendor; * * * The right to collect the compensation does not pass to the purchaser unless specially assigned."

The judge also gave additional reasons which plaintiff claims have no merit. In view of our decision it will not be necessary to discuss them.

Plaintiff appellant contends that there was due process of law; that defendants are not permitted to make a collateral attack on a condemnation judgment; that defendants had no interest in lot 11 at the time of the condemnation proceedings and as subsequent purchasers cannot allege the invalidity of the proceedings; that no right of action has been assigned to them; that they are guilty of laches; and plaintiff further contended, on oral argument in this Court, that the Othmers should have either mandamused the State to pay over the moneys to them, or attempted to recover the payment which was made to the Grevnins; that the payment of taxes assessed against the property does not affect the rights of the public; and that adverse possession cannot be acquired against the State. Even if plaintiff is correct in some of his contentions, in the last analysis, with all of the facts and circumstances taken together, we believe that the judge was absolutely correct and that he reached the right conclusion, even though some of the other reasons given by him in reaching his conclusion may be questioned.

At the time of the attempted condemnation plaintiff's predecessor in office, either directly or through his attorneys could have ascertained the owner of the title to lot 11 with only the very slightest effort. It is not a case where there were unknown heirs or other parties not disclosed by the public records. It would have taken but a few moments to obtain the necessary information from the register of deed's office, as there had been but a few transfers of title subsequent to the grant from the State of 1920. Notwithstanding all this, it was stated on the determination of necessity that the owners were unknown. This was an absolutely incorrect statement. The knowledge was a matter of record, so easily obtainable that it is difficult for us to understand the statement that the owners were unknown. It is equally difficult to understand why the value of the property was stated to be $1.

Section 4 of the act, hereinbefore referred to, provided:

"Whenever the commissioner or commissioners shall be unable to agree with any person interested in any such property for the purchase thereof, * * * the commissioner or commissioners may make a written determination of the necessity of the particular road construction * * * for which such property is desired."

In *Allen* v. *Rogers,* 246 Mich 501, the State highway commissioner contended that this section was permissive, not mandatory. It was held, however, that a good-faith effort to purchase was still a condition to a valid determination of necessity under the statute, and that such condition should have been observed. We are at a loss to understand how the commissioner could excuse himself from making an effort to agree with the persons interested in the property

by simply stating "owner—unknown" when the public records were accessible to him.

Plaintiff claims, however, that there was a valid judgment in the condemnation proceedings; that the determination of necessity, followed by proceedings in the probate court with the appointment of commissioners, had ripened into a judgment or decree which is not open to collateral attack. Plaintiff cites *Ziegel* v. *Genesee County Board of Road Commissioners,* 241 Mich 161, and *Jacox* v. *State Highway Commissioner,* 334 Mich 482, to the effect that a determination of necessity is a judgment. These cases do not go that far. The *Ziegel Case* holds that such proceedings were of a judicial nature, and that the remedy for review was by certiorari. In the *Jacox Case* under entirely different facts presented and where there was no question of service, we held that a determination for taking lands described for limited access highway purposes is a judgment of necessity of taking for such purposes. We have heretofore held that:

"Proceedings to condemn land are special and summary in character and, while subject to judicial review and supervision for certain purposes, are not judicial proceedings." *United States Gypsum Co.* v. *Kent Circuit Judge,* 150 Mich 668.

See, also, *Chicago & Kalamazoo T. R. Co.* v. *Grand Rapids & I. R. Co.,* 153 Mich 686.

In the instant case no notice was given to the owner and what is still more important, as the trial court emphasized, no payment whatsoever was made to the owner whose name was disclosed by the public records, accessible to the State and to everyone else. Article 13, § 1, of the Constitution (1908) of this State provides that private property shall not be taken without "just compensation being first made

or secured in such manner as shall be prescribed by law."

On account of the importance of the question we cite a number of cases where it has arisen. In *Burke* v. *City of River Rouge,* 240 Mich 12, we said:

"[The statute] laid a plain legal duty on the municipality and its officers to provide for the payment of the award. Without making such provision, and without paying the award, the city took possession of the premises, an act amounting to confiscation under the Constitution."

Again in *Belawski* v. *Union Trust Co.,* 240 Mich 429, we stated:

"There can be no actual taking until the necessity therefor is first determined and compensation made or secured by placing it in the city treasury. In this State these proceedings are conditions precedent to the passing of title or the taking of the property."

Again in *Re Petition of State Highway Commissioner,* 279 Mich 285, we held:

"There can be no question but that one whose property is taken for public use has the constitutional right to 'just compensation;' * * * As applied to the instant case the provision in the Federal Constitution does not differ materially from that in the Michigan Constitution, which we quote:

" 'Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law.' Constitution 1908, art 13, § 1.

"Because of the above-quoted constitutional provision and also statutory requirements * * * there must be both the determination of necessity and compensation made or secured before the condemnor can take possession of the condemned property."

The question also arose again in *Anderson Trust Co.* v. *American Life Insurance Co.,* 302 Mich 575, where we stated:

"We think that the constitutional provision, 'private property shall not be taken' means more than that the possession of private property shall not be taken. It means that the title to private property shall not pass (which alone would give the right to take possession) 'without * * * just compensation being first made or secured in such manner as shall be prescribed by law.' It would be rather strange and illogical to conclude, as plaintiff herein asserts, that title to condemned property passes as of the date of confirmation of award, notwithstanding it seems to be conceded that the law specifically forbids the condemnor from exercising the important right incident to ownership—the right to take possession—until just compensation is first made or secured."

To like effect, see *Steadman* v. *Clemens,* 321 Mich 54.

Error is claimed by plaintiff to the judge's retaining jurisdiction to determine damages caused by the bringing of the suit. Plaintiff calls attention to the fact that the suit was brought in good faith and, moreover, that the State is immune from suit and liability in the circuit courts of the State and such immunity can be waived only by the legislature. *Manion* v. *State Highway Commissioner,* 303 Mich 1. The entire question of the right of defendants to recover damages in this proceeding is not fully briefed. As there has been neither decree nor judgment rendered against the State or plaintiff in his representative capacity, we need not further discuss the question. If any decree or judgment is rendered, either party always has the right of appeal.

The decree dismissing the bill is affirmed, with costs to defendants.

DETHMERS, C. J., and ADAMS, CARR, SHARPE, BOYLES, and REID, JJ., concurred.

BUSHNELL, J., did not sit.