**Norman P. SILVERSTEIN et al.,**
**Plaintiffs,**

v.

**CITY OF DETROIT, MICHIGAN, a**
**Michigan corporation, Defendant.**

**Civ. A. 28857.**

United States District Court,
E. D. Michigan, S. D.

Oct. 13, 1971.

Common Council of the city on August 20, 1957, although the city did not acquire legal title to the property until August 22, 1963. While plaintiffs were compensated for the taking of their land, they now contend that such compensation was not "just" in that the amount was computed to be the value of the property in August of 1963, rather than at the time when plans to condemn the property were made public in 1957. They argue that the city by its acts began to take their property in 1957, even though the taking was not completed until 1963 and, therefore, that compensation, in order to be just, must be the value of the property at the time when the taking began rather than when it culminated.

Defendant has moved to dismiss this action on three grounds. It contends first that plaintiffs have alleged no actionable wrong against them. The city also maintains that the action is barred by the applicable Michigan statute of limitations, Michigan Statutes Annotated § 27A.5805, M.C.L.A. § 600.5805 and finally argues that plaintiffs are estopped to now complain that they did not receive just compensation for their property by virtue of a written and signed stipulation of value executed before final condemnation proceedings occurred.

The theory of plaintiffs' case is identical in substance to that which was recognized as stating a cause of action by The Honorable Fred W. Kaess of this district in Foster v. City of Detroit, 254 F.Supp. 655 (E.D.Mich., 1966), aff'd 405 F.2d 138 (6th Cir. 1968), and more recently, by The Honorable Damon J. Keith, also of this district, in Madison Realty Co. v. City of Detroit, 315 F. Supp. 367 (1970). Defendant's first contention, that plaintiffs have failed to state a cause of action upon which relief may be granted, must therefore be rejected. While, as defendant argues, *Foster* may be factually distinguishable, the legal principles approved in that case are wholly applicable to the present action.

---

Charles E. Fonville, Detroit, Mich., for plaintiffs.

William J. Coughlin, Asst. Corp., Counsel, Detroit, Mich., for defendant.

## OPINION AND ORDER.

KENNEDY, District Judge.

Plaintiffs have brought this action to recover damages for injuries to certain formerly owned real property, alleging that such property was taken by the City of Detroit without just compensation having first been paid to them in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. Jurisdiction is properly invoked under Title 28, United States Code, Section 1331, the amount in controversy being in excess of $10,000.

Plaintiffs assert that prior to August 22, 1963, they were owners of certain income-producing property located in the City of Detroit. This property was approved for condemnation by the

Defendant contends that the three-year statute of limitations governing this action, M.S.A. § 27A.5805, M.C.L. A. § 600.5805, began to run when plaintiffs signed certain stipulations as to what amount of compensation would be satisfactory to them and, since the action was initiated more than three years subsequent to the signing of the stipulations, the statute of limitations provides an absolute affirmative defense. It appears that the undated stipulations were signed sometime during the month of July, 1963; the complaint herein was filed August 15, 1966.

Plaintiffs' position is that their cause of action did not arise, and the statute of limitations consequently did not begin to run, until August 22, 1963, the date on which the deeds were delivered to the city and compensation actually received.[1] If this contention is correct, this action was commenced within the three-year limitation period and defendant's motion, at least on this ground, must be denied.

At the outset of the Court's discussion of this issue, it should be noted that the time of the taking of plaintiffs' property is not necessarily coincidental with the time plaintiffs' cause of action arose. A taking, in the sense that term is used here, may continue over a period of time, while a cause of action arises at only one specific point in time. In Foster v. City of Detroit, *supra*, for example, while the court ruled that the plaintiffs' land had been "taken" for the purposes of determining just compensation in 1960, it held that the cause of action did not come into existence until 1963 as "the wrong did not reach fruition or give rise to the suit" until that time. 405 F.2d at 145. Therefore, while plaintiffs here contend that their property was "taken" in 1957 and that just compensation is the value of the property at

that time, neither party here argues that the cause of action arose in 1957. The narrow issue presented in this motion is concerned solely with a determination of when plaintiffs' cause of action, if any, arose. The specific factual situation here does not appear to have previously been presented to any Michigan appellate court nor to a Federal court.

United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), however, involved an analogous situation in which the Federal government, without formally condemning the plaintiffs' land, had dammed a river and raised the water level by successive stages until it flooded part of that land. More than six years after the dam began to impound water, but less than six years after the water reached its ultimate level, plaintiffs sued for compensation. The Government argued that the action was barred by the applicable six-year statute of limitations. The Supreme Court, while not dealing with the precise issue presented here, nevertheless offered instructive commentary addressed to the general principles of law which necessarily control this Court's resolution of the instant problem. Mr. Justice Frankfurter, speaking for the Court, stated at 748, 67 S.Ct. at 1384, 1385:

> The Constitution is "intended to preserve practical and substantial rights, not to maintain theories." Davis v. Mills, 194 U.S. 451, 457, 24 S.Ct. 692, 48 L.Ed. 1067. One of the most theory-ridden of legal concepts is a "cause of action." This Court has recognized its "shifting meanings" and the danger of determining rights based upon definitions of "a cause of action" unrelated to the function which the concept serves in a particular situation. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 67 et seq., 53 S.Ct. 278, 77 L.Ed. 619.

---

1. The Court separated the trial of the statute of limitations issue. Both parties presented evidence on this issue on August 10, 1971 and the Court made its findings of fact on the record at the end of the hearing. It found that the deeds to the property were delivered to the City of Detroit and payment received by counsel for plaintiffs on August 22, 1963.

The Fifth Amendment expresses a principle of fairness and not a technical rule of procedure enshrining old or new niceties regarding "causes of action"—when they are born, whether they proliferate, and when they die. We are not now called upon to decide whether in a situation like this a landowner might be allowed to bring suit as soon as inundation threatens. Assuming that such an action would be sustained, it is not a good enough reason why he must sue then or have, from that moment, the statute of limitations run against him. If suit must be brought, lest he jeopardize his rights, as soon as his land is invaded, other contingencies would be running against him—for instance, the uncertainty of the damage and the risk of *res judicata* against recovering later for damage as yet uncertain. The source of the entire claim—the overflow due to rises in the level of the river—is not a single event; it is continuous. And as there is nothing in reason, so there is nothing in legal doctrine, to preclude the law from meeting such a process by postponing suit until the situation becomes stabilized. An owner of land flooded by the government would not unnaturally postpone bringing a suit against the Government for the flooding until the consequences of inundation have so manifested themselves that a final account may be struck.

In this case also, the source of plaintiffs' claim "is not a single event; it is continuous." The allegation is that the wrong to plaintiffs commenced on August 20, 1957, with the action taken by the Common Council of Detroit, and continued until sometime in 1963. The city's position would be that the situation became "stabilized" when plaintiffs signed the stipulations of value; plaintiffs would argue that this stage was not reached until the deeds were exchanged for compensation.

■ Of what legal significance was the signing of the stipulations? These documents, pre-printed forms furnished by the city, read as follows: "I understand the City's appraiser will testify the fair market value of Parcel 315 known as 3801–3817 Hastings to be $31,000 dollars, which price is satisfactory to me." An identical writing was signed by both plaintiffs with reference to Parcel 336, known as 640 Leland; the stipulated value being $8,100. (This second stipulation contained the handwritten notation, apparently added by the representative of the city, Russell Chambers, "Subject to URA approval.") These documents were certainly not binding contracts; their precise legal significance is unclear. Indeed, there is a serious question as to whether *any* legal significance is attached to these writings. In Madison Realty Co. v. City of Detroit, *supra*, the property owners had also entered into a "settlement" with the city with respect to the amount of compensation to be received for their property. While the city argued that the plaintiffs there should have been bound by that settlement figure, Judge Keith disagreed, awarding the plaintiffs a judgment far in excess of that stipulated in the settlement. While this Court does not now rule on the legal effect of the written stipulations in the record here, it is nevertheless of the opinion that the signing of an instrument of such an uncertain character is not an event possessing sufficient certainty to constitute the origin of a cause of action.

As the Supreme Court observed in *Dickinson*, "When dealing with a problem which arises under such diverse circumstances procedural rigidities should be avoided." 331 U.S. at 749, 67 S.Ct. at 1385. The Court further noted that the question as to exactly when a cause of action has arisen "is after all a practical matter and not a technical rule of law." *Id*. In the circumstances here presented, the Court finds that the situation became far more "stabilized" on the day that the deeds were exchanged for the compensation than at the time the stipulations were signed. Until that

time, plaintiffs still maintained an interest in the property.

■ If the taking began in 1957, as plaintiffs allege, it did not culminate until the deeds were transferred to the city; the property damages which plaintiffs contend they suffered, including loss of substantial rental income, would necessarily have continued until that time. While it might be argued that the taking was complete when the compensation due plaintiff according to the settlement was "secured" in the city treasury pursuant to Article X, section 2 of the Michigan Constitution of 1963, and it might be demonstrated that this amount was "secured" prior to August 15, 1963, this would still not bar plaintiffs' claim. The Michigan Constitution provides: "Private property shall not be taken for public use without *just* compensation therefore being first made or secured in a manner prescribed by law." [emphasis supplied]. Since plaintiffs allege that *just* compensation was never paid them, the securing of whatever compensation was given to them would not, accepting for the moment plaintiffs' claims to be true, constitute the constitutionally required prerequisite for a proper public taking. In Anderson Trust Co. v. American Life Insurance Co., 302 Mich. 575, 584, 5 N.W.2d 470, 474 (1942), the Michigan Supreme Court stated:

> We think that the constitutional provision, "Private property shall not be taken" means more than that possession of private property shall not be taken. It means that title to private property shall not pass (which alone would give the right to take possession) "without * * * just compensation being first made or secured in such manner as shall be prescribed by law." It would be rather strange and illogical to conclude, as plaintiff herein asserts, that title to condemned property passes as of the date of confirmation of award, notwithstanding it seems to be conceded that the law specifically forbids the condemnor

from exercising the important right incident to ownership—the right to take possession—until just compensation is first made or secured.

If, as plaintiffs allege, they never received just compensation for their property, then it follows that the city wrongfully acquired title to their property and the time at which the wrong occurred was when the deeds were transferred. This being the case, plaintiffs' action was initiated within the limitations period.

Upon careful consideration of the applicable principles of law as well as the practicalities here involved, the Court holds that plaintiffs' cause of action did not arise until August 22, 1963, the date on which the deeds were transferred and the city acquired the right to possession, and this lawsuit, having been filed on August 15, 1966, is not barred by the statute of limitations.

■ Defendant's final contention in support of its Motion to Dismiss is that, on the basis of their signed stipulations of value, plaintiffs are now estopped from complaining that they did not receive just compensation in exchange for their property. As noted above in another context, the plaintiffs in *Madison Realty* had also reached a "settlement" with the City of Detroit concerning the value of their property. Judge Keith ruled, however, that under the circumstances presented, the plaintiffs had had little choice at the time but to reach a settlement and therefore were not estopped from later contending that the compensation received was not just. There being nothing in the record in this matter at this time to persuade the Court to rule differently than Judge Keith on this virtually identical issue, defendant's Motion to Dismiss cannot be granted on this ground either.

Defendant's Motion to Dismiss is denied.

The action will be set for trial of the remaining issues raised by plaintiff's complaint.