## HART v CITY OF DETROIT

Docket No. 65370. Argued October 13, 1981 (Calendar No. 4).—Decided December 23, 1982.

Sylvia Hart and others brought an "inverse condemnation" class action against the City of Detroit, alleging that their several properties were taken de facto for an urban renewal project prior to commencement of formal condemnation proceedings, without payment of just compensation. All of the properties were directly or indirectly acquired by the city after the de facto takings as a result of nonpayment of taxes. The city moved for accelerated judgment on the ground that the claims had accrued at the time the plaintiffs' rights of redemption expired at the latest, and that since more than three years had passed after that, the claims were barred by the three-year limitation of actions to recover damages for injury to property. The Wayne Circuit Court, Benjamin D. Burdick, J., granted the city's motion. The Court of Appeals, M. F. Cavanagh and Cynar, JJ. (R. M. Maher, P.J., dissenting), affirmed, holding the three-year period of limitation to be the correct one (Docket No. 78-3489). The plaintiffs appeal.

In an opinion written by the late Justice Moody, adopted as their own by Chief Justice Fitzgerald and Justices Williams, Coleman, and Ryan, the Supreme Court *held:*

An "inverse condemnation" action may be barred if commenced after six years from the date on which a claim for compensation accrues. Such an action is personal, even though it arises out of a former interest in real property, because the right to compensation accrues upon the conversion of the property by the condemnor and the extinction of the plaintiff's right to regain possession.

1. The 15-year period of limitation of actions challenging title by adverse possession does not apply on the facts of this case. In an inverse condemnation action, the plaintiff usually con-

References for Points in Headnotes

[1, 2] 26 Am Jur 2d, Eminent Domain § 173.

27 Am Jur 2d, Eminent Domain § 478.

[3-7] 27 Am Jur 2d, Eminent Domain §§ 498-500.

cedes that title to the property has been taken indirectly by the condemnor, while an action challenging adverse possession asserts a continuing claim of ownership. Further, the plaintiff in an inverse condemnation action does not ordinarily seek possession of the property, but rather, just compensation, while in an adverse possession case, if the title is secured by the adverse possessor the former owner is not entitled to payment. Finally, the rationale for applying the adverse possession statute of limitations rests on the owner's present interest in the property, but the plaintiffs here lost all of their interests in the properties upon expiration of the period of redemption following sale for delinquent taxes.

2. The three-year period of limitation of actions for damages for injury to property does not apply to this inverse condemnation action. An injury to property, although it may amount to a "taking" for which just compensation is due, may leave the owner in possession and is not synonymous with the total conversion of property which gives rise to this inverse condemnation action.

3. The cause of action for inverse condemnation in these cases accrued, and thereby started the running of the applicable statute of limitations, no later than the day on which the property owner's right of redemption expired. The time of the taking which provides the basis for the cause of action is not necessarily coincidental with the time of accrual. The precise point is a question of fact in each case. The wrong of the condemnor may be continuous, rather than a single act, delaying the running of the statute of limitations until the consequences of the condemnor's actions have stabilized. If the consequences of the wrongful taking had stabilized before the expiration of the time for redemption, then the date of stabilization is the date of accrual. If the condition had not stabilized when the time for redemption expired, then the action accrued on the last date the plaintiffs had any interest in the property, the date on which the right of redemption expired.

4. The claims of the plaintiffs whose redemption period had expired more than six years prior to the bringing of the class action are barred by the operation of the statute of limitations. The determination of the various expiration dates is for the trier of fact.

Justice Levin, joined by Justice Kavanagh, concurring in part and dissenting in part, agreed that the six-year statute of limitations applied, but did not agree that the latest time when a cause of action could have accrued was the last date when a plaintiff had any interest in the property, the day the right of

redemption expired. Because a claim accrues at the time the wrong upon which the claim is based occurred regardless of the time when damage results, a cause of action for inverse condemnation may accrue coincidentally with, before, or after the time the damage is suffered. The cause should be deemed to have accrued for all the parcels similarly affected at the same time. When the cause accrued depends solely upon the conduct of the city, not upon the plaintiffs' reaction to that conduct. The nature of the action is for a wrongful taking of property. The expiration of the plaintiffs' right of redemption was not an aspect of the inverse condemnation, but a consequence of it. While the plaintiffs may not be able to recover damages for diminution of the value of the property after the expiration of their rights of redemption, the time of the accrual of their personal causes of action is the same as that of the property owners who paid their taxes.

97 Mich App 697; 296 NW2d 151 (1980) reversed.

OPINION OF THE COURT

1. EMINENT DOMAIN — INVERSE CONDEMNATION — CONSTITUTIONAL LAW — COMPENSATION.

A plaintiff in an inverse condemnation action, whose real property was taken for public use without condemnation proceedings, is entitled to just compensation for the value of the property (US Const, Am V; Const 1963, art 10, § 2).

2. EMINENT DOMAIN — INVERSE CONDEMNATION — COMPENSATION — REPOSSESSION.

A plaintiff in an inverse condemnation action, whose real property was taken for public use without condemnation proceedings and who then allowed the property to be sold to the condemnor or the state for delinquent taxes, may not seek repossession of his property, but only just compensation, because the person's title and interest in the property was lost upon the expiration of the time for redemption of the property from the tax sale.

3. EMINENT DOMAIN — INVERSE CONDEMNATION — COMPENSATION — LIMITATION OF ACTIONS.

Inverse condemnation of real property, where the title of the owner of the property has been taken indirectly by the condemnor without institution of condemnation proceedings, is not necessarily analogous to adverse possession, and thus the 15-year limitation on actions which challenge title by adverse possession by asserting a continuing claim of ownership does

not apply to inverse condemnation actions for compensation; nor does the 3-year period of limitation of actions to recover damages for injury to real property apply because, to establish the cause of action, a plaintiff must prove conversion of the property rather than injury to it; the proper period is the general 6-year limitation of personal actions because the claim involves a former interest in real property (MCL 600.5801[4], 600.5805[8], 600.5813; MSA 27A.5801[4], 27A.5805[8], 27A.5813).

4. EMINENT DOMAIN — INVERSE CONDEMNATION — LIMITATION OF ACTIONS.

The period of limitation of inverse condemnation actions for compensation for an indirect taking of real property for public use without institution of condemnation proceedings, followed by acquisition of tax title by the condemnor, begins to run no later than the day on which the former owner's right of redemption from the tax sale expires; if the consequences of the wrongful taking had stabilized before then, the date on which they stabilized is the date on which the statute started to run (MCL 600.5813; MSA 27A.5813).

OPINION CONCURRING IN PART AND DISSENTING IN PART BY LEVIN, J.

5. EMINENT DOMAIN — INVERSE CONDEMNATION — ACCRUAL OF ACTIONS.

*A cause of action for inverse condemnation, because it is not specifically provided for by the statute governing accrual of actions, accrues at the time the wrong upon which the claim is based was done, regardless of the time when damage results, and thus may accrue coincidentally with, before, or after the time the damage is suffered (MCL 600.5827; MSA 27A.5827).*

6. EMINENT DOMAIN — INVERSE CONDEMNATION — ACCRUAL OF ACTIONS.

*Inverse condemnation results from a continuing wrong, and the time of accrual of an action for inverse condemnation is when the situation stabilizes or comes to rest.*

7. EMINENT DOMAIN — INVERSE CONDEMNATION — ACCRUAL OF ACTIONS. .

*The causes of action of the owners of similarly situated parcels of property for inverse condemnation should be deemed to accrue for all the parcels at the same time because the accrual of the cause depends upon the conduct of the condemnor and not upon the reaction of the owner; the failure of certain owners to continue to pay property taxes after a de facto taking and the expiration of their right of redemption from a tax sale does not*

*affect the time when such a cause of action may accrue, because the nature of the action is for a wrongful taking of property, and the expiration of the right of redemption is not an aspect, but a consequence, of the taking.*

*Mason, Steinhardt & Jacobs* (by *Frederick D. Steinhardt* and *Walter B. Mason, Jr.)* for plaintiffs.

*Monaghan, Campbell, Loprete, McDonald & Morris* (by *Boris K. Yakima,* Special Assistant Corporation Counsel) for defendant.

FITZGERALD, C.J., and WILLIAMS, COLEMAN, and RYAN, JJ. This opinion was written by Justice BLAIR MOODY, JR., prior to his death on November 26, 1982. We concur in this opinion and adopt it as our own.

The original complaint in this inverse condemnation class action was filed May 9, 1974. Proper notice was given to all eligible class members. Owners of 42 parcels of land joined the class. On August 18, 1978, the trial court granted defendant's motion for accelerated judgment on the ground that all but seven of the plaintiffs' claims were barred by the three-year statute of limitations pertaining to damages for injuries to persons and property.

The Court of Appeals affirmed the trial court's decision, holding that the three-year statute of limitations was the proper statute to employ. 97 Mich App 697; 296 NW2d 151 (1980). This Court granted leave to appeal to determine whether the three-year statute of limitations for "injuries to persons and property" applies to inverse condemnation actions and, if not, what limitations period, if any, is applicable. Furthermore, if we find that a statute of limitations is applicable, we are asked to determine when the limitation period would begin to run as to the properties in this case.

FACTS

The Court of Appeals decision succinctly set forth the pertinent facts as follows:

"This appeal is submitted on a stipulated statement of facts. The statement indicates that the parcels of realty in question are located within the boundaries of defendant's Elmwood Park Urban Rehabilitation Project No. 3 (Elmwood 3). A part of Elmwood Park,[2] the affected area contains approximately 1,400 separate parcels of land. Elmwood 3 was originally conceived by city planners in the mid-to-late 1950's. As part of its urban renewal efforts, defendant City of Detroit has acquired and demolished the structures upon virtually every parcel within Elmwood Park in order to facilitate redevelopment.

"All parties have stipulated that the actions of defendant in the Elmwood 3 project resulted in a de facto taking of plaintiffs' property without just compensation therefor. However, in each instance the subject properties were either directly or indirectly acquired by defendant as a result of nonpayment of taxes.[3] This occurred after the de facto takings but well prior to the commencement of any formal condemnation proceedings by defendant. The plaintiffs now appealing were not joined as parties to any of 12 formal condemnation proceedings filed by defendant from August 3, 1971, to November 27, 1972.

"On May 9, 1974, the within action was instituted, well after all the parcels involved in this controversy were conveyed for nonpayment of taxes, and more than three years after the right of equity of redemption had expired with respect to every parcel.

"Because this right had expired with respect to the parcels formerly owned by the plaintiffs on appeal, the lower court concluded that each plaintiff's cause of action accrued, at the latest, on the date of expiration of their right to redeem. Applying (as noted hereinbefore) the three-year statute of limitations found in MCL 600.5805(7); MSA 27A.5805(7), the trial court held that the claims of the plaintiffs now appealing were barred

thereby because their claims accrued, at the latest, more than three years prior to the institution of the class action suit, and were thus without the statute of limitations."

---

"2 Elmwood Park, an area on the lower east side of Detroit, not far removed from downtown, also includes Elmwood 1 and 2, Urban Renewal Areas as well, which abut Elmwood 3.

"3 The parcels were conveyed via tax deeds. Those acquired indirectly were purchased by defendant from the State of Michigan for a nominal consideration of $1 per parcel."

---

*Hart, supra,* 97 Mich App 700-701.

## I

Inverse condemnation is a taking of private property for a public use without the commencement of condemnation proceedings. Under the Michigan[1] and United States[2] Constitutions, a victim of such a taking is entitled to just compensation for the value of the property taken.[3]

The parties agree that the real property involved here was de facto taken but not paid for by the City of Detroit pursuant to *In re Urban Renewal, Elmwood Park Project,* 376 Mich 311; 136 NW2d 896 (1965), and *Foster v Detroit,* 405 F2d 138 (CA 6, 1968). The disputed issue is whether this action is barred by a statute of limitations.

Plaintiffs first contend that due process rights guaranteed by the state and federal constitutions cannot be cut off by any statute. Since the issue is one of first impression in this state, plaintiffs primarily rely on *Ackerman v Port of Seattle,* 55

---

[1] Const 1963, art 10, § 2.

[2] US Const, Am V.

[3] See, generally, 30 CJS, Eminent Domain, § 399, p 475; 27 Am Jur 2d, Eminent Domain, § 478, p 408.

Wash 2d 400; 348 P2d 664 (1960), to support this proposition.

The *Ackerman* court did state that an action for compensation predicated on a constitutional taking would not be barred by any statute of limitations. However, this would only apply when the individual still held an interest in the property. If the individual lost this interest by adverse possession, such an action would be barred. The court stated:

"We have held that an action for constitutional taking is not barred by any statute of limitations and may be brought at *any time before title to the property taken is acquired by prescription.*" (Emphasis added.) 55 Wash 2d 405.

This point was further clarified in *City of Snohomish v Joslin,* 9 Wash App 495; 513 P2d 293 (1973), where the court denied plaintiff's claim for compensation regarding property which the city had acquired by prescription. The court upheld the *Ackerman* rule as quoted above but stated:

"We recognize anomaly inherent in the statement of the rule. Acquisition of title by way of prescription *is* the result of the barring of an action by a statute of limitation." 9 Wash App 497.

Therefore, it is not totally accurate to state that in Washington an inverse condemnation action is not barred by any statute of limitations. Under these cases, a plaintiff's constitutional right to compensation would expire whenever title to the property was lost by prescription; such a loss of title is predicated on the expiration of a statute of limitations.

Additionally, plaintiffs' contention that no statute of limitations can bar a constitutional right is not supported by pertinent holdings of the United States Supreme Court. In *United States v Dickinson,* 331 US 745; 67 S Ct 1382; 91 L Ed 1789 (1947), a leading case on the applicability of statutes of limitations in inverse condemnation cases, a six-year federal statute of limitation period established for claims founded upon the United States Constitution was applied.[4] Because the plaintiff's claim was founded on the Fifth Amendment provision that private property shall not be taken for public use without just compensation, the Court held that the applicable statute of limitations was six years. See, also, *Soriano v United States,* 352 US 270; 77 S Ct 269; 1 L Ed 2d 306 (1957); *Loesch v United States,* 227 Ct Cl 34; 645 F2d 905 (1981).

In view of the context of these determinations, we are not persuaded by plaintiff's claim that no statute of limitations should apply in this case. In determining which limitation period is applicable, three Michigan statutes are relevant:

MCL 600.5801; MSA 27A.5801:

"No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

\* \* \*

"(4) In all other cases under this section, the period of limitations is 15 years."

MCL 600.5805(7); MSA 27A.5805(7):[5]

---

[4] See 28 USC 2401.

[5] After the accelerated judgment was granted in this case, 1978 PA

"The period of limitations is 3 years for all other actions to recover damages for injuries to persons and property."

MCL 600.5813; MSA 27A.5813:

"All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."

Plaintiffs contend that if a statute of limitations must apply, the one most closely analogous to an inverse condemnation action is the 15-year limitation which applies to adverse possession actions. On the facts of this case, however, the analogy falls short.

It is well-established in Michigan that adverse possession must be actual, visible, open, notorious, exclusive, continuous, under cover of claim of right and uninterrupted for the statutory period. *Burns v Foster,* 348 Mich 8; 81 NW2d 386 (1957); *Rose v Fuller,* 21 Mich App 172; 175 NW2d 344 (1970); *Whitehall Leather Co v Capek,* 4 Mich App 52; 143 NW2d 779 (1966). If the party alleging title by adverse possession does not prove it by clear and positive proof, then the original owner regains possession of the property. *Burns* and *Rose, supra.*

In contrast, a party who institutes an inverse condemnation action usually concedes that the condemnor has taken the property indirectly by its actions preceding formal institution of condemnation proceedings. It would be unusual for the condemnor's acts to be of such a degree as to satisfy the strict test for adverse possession. Plain-

495 renumbered this section MCL 600.5805(8); MSA 27A.5805(8), and made stylistic changes and minor substantive changes not here relevant.

tiffs do not allege that the city's actions here would satisfy this test. Neither would the stipulated facts support such a claim.

Furthermore, the plaintiff in an inverse condemnation suit does not ordinarily seek repossession of his property, but rather, just compensation for the value of the property taken. *Tamulion v State Waterways Comm,* 50 Mich App 60, 66; 212 NW2d 828 (1973). This is again unlike the adverse possession case where, if title to the property is secured by the adverse possessor, the original owner is not entitled to payment.

We do recognize that in actions such as the present one compensation to the original owner, as a substitute for the property itself, is the only viable alternative. The eminent domain power of the condemnor leaves the property owner with no option other than to seek compensation. Accordingly, these differences do not necessarily cause us to reject the 15-year adverse possession limitation period. Nevertheless, a final fatal flaw exists in plaintiffs' analogy with respect to this case.

The concept of adverse possession rests upon an interest in title to property. Plaintiffs point out that Texas, California, and Nebraska have adopted the adverse possession statutes of limitations (ten, five, and ten years, respectively) for inverse condemnation actions.[6] However, the rationale for applying the adverse possession limitation period rests on the owner's present interest in the property. This was explained in *Frustuck v City of Fairfax,* 212 Cal App 2d 345, 374; 28 Cal Rptr 357 (1963), where the court stated:

---

[6] *Brazos River Authority v City of Graham,* 163 Tex 167; 354 SW2d 99 (1961); *Frustuck v City of Fairfax,* 212 Cal App 2d 345; 28 Cal Rptr 357 (1963); *Krambeck v City of Gretna,* 198 Neb 608; 254 NW2d 691 (1977).

"The rationale of these latter cases is that *the owner's right of recovery is founded upon and grows out of his title to land* and that until such title is lost by adverse possession the owner should have the right to maintain an action to recover that which represents the property itself." (Emphasis added.)

However, plaintiffs here lost all title and interest to the properties upon the expiration of the period of redemption following the sale of the properties for nonpayment of taxes. *Rosin v State Land Office Board,* 314 Mich 482, 486; 22 NW2d 833 (1946). When the present action was commenced, plaintiffs had no ownership rights in the properties, legal or equitable. Under such circumstances, there is no foundation to apply a 15-year limitation period that is predicated upon the plaintiff having continual ownership rights.

We do not foreclose the possibility that on the proper facts, where a plaintiff retains ownership rights in the property when suit is brought, the analogy to adverse possession may be applied. However, on the facts of this inverse condemnation action, we decline to adopt the adverse possession statute of limitations.

Defendant contends that the Court of Appeals was correct in upholding the trial court's finding that the three-year limitation period for "injury to persons and property" should be employed. Defendant claims there is ample authority for the proposition that the three-year limitation period applies to this case, citing *Foster v Detroit,* 405 F2d 138, 145 (CA 6, 1968), and *Silverstein v Detroit,* 335 F Supp 1306, 1308 (ED Mich, 1971).

In both *Foster* and *Silverstein,* the City of Detroit asserted the three-year statute as an affirmative defense. Yet, the question of whether the *three*-year period was the proper limitation period

was not directly contested or addressed. Although both federal courts assumed that the three-year limitation period would apply, in neither case was the plaintiff's cause held to be barred by the statute. Defendant points to no prior Michigan case in which recovery in an inverse condemnation suit was barred by application of the three-year statute of limitations.

In response to the claim that the three-year statute is applicable, plaintiffs contend that the three-year statute applies only to injury to property and not to the taking of property. Defendant agrees with plaintiffs that, because of the language of the Michigan Constitution, Michigan is a "taking" state rather than a "taking or damaging" state.[7] However, defendant maintains that "damage" and "injury" to property are synonymous with a "taking" of property in an inverse condemnation action and that, therefore, the three-year limitation period for "injury to property" should apply.

We agree that a "taking" of property may be the end result of serious injury to and diminution in the value of real property. *Thom v State Highway Comm'r,* 376 Mich 608; 138 NW2d 322 (1965). "Taking" is a term of art with respect to the constitutional right to just compensation and does not necessarily mean the actual and total conversion of the property. Whether a "taking" occurs for which compensation is due depends on the facts and circumstances of each case. *Thom, supra; Heinrich v Detroit,* 90 Mich App 692; 282 NW2d 448 (1979).

Both an injury to property and an absolute

---

[7] Const 1963, art 10, § 2 provides:

"Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law."

conversion of property may result in a taking in the constitutional sense. While each situation could result in a finding that a constitutional "taking" of property has occurred for which just compensation is due, there is a recognizable distinction between the two situations.[8]

The owner who suffers injury to his property, less than a total conversion, may remain in possession and continue using his property. His claim is for diminution in value and interference with the use and enjoyment of his property. On the other hand, the owner who suffers a conversion of his property is left with nothing. His claim is for the value of the entire piece of realty.

It might appear that the injury to property situation, less than a total conversion, is analogous to the "injury to property" cases in which the three-year statute of limitations is applicable. However, the test to prove injury is not the same. In an inverse condemnation action, it is not enough for the owner to prove injury to his property by the defendant with resultant damages. Rather, plaintiff must prove that the condemnor's actions were of such a degree that a taking occurred. This issue is decided by the trier of fact. If the plaintiff cannot prove that the condemnor has taken his property, other causes of action are still available to him, *e.g.,* trespass, nuisance, and negligence, with their attendant statutes of limitations.

In situations where the plaintiff alleges that a total conversion of his property has occurred, the analogy to the injury to property statute is even less satisfactory. A plaintiff in such a situation

---

[8] This distinction was also recognized by the Washington and California courts in *Ackerman,* 55 Wash 2d 406, and *Frustuck,* 212 Cal App 2d 374.

claims a complete loss of his realty by the condemnor's actions. He seeks recovery for the total value of his property which has been taken by the condemnor. He does not retain the value of possession and use of his property.

Although we recognize a distinction between the two types of "taking" to establish an inverse condemnation cause of action, the plaintiff in each situation must prove that a taking in the sense of conversion has occurred, not merely that he has suffered injury to his property. Accordingly, we find that the three-year statute of limitations for "injuries to persons and property" is not applicable to inverse condemnation actions.

The final statute of limitations to be considered is the general six-year period for "personal actions". The Court of Appeals majority rejected this limitation period by stating that personal claims do not include claims based upon real property rights. 97 Mich App 702. However, this rationale ignores cases in which the six-year period has been applied to personal actions which arose in connection with interests in real property. *Weeks v Slavik Builders, Inc,* 384 Mich 257; 181 NW2d 271 (1970) (action for breach of implied warranty of roof on new home); *Sweet v Shreve,* 262 Mich 432; 247 NW 711 (1933) (action for fraud in exchange of real estate); *Borman's, Inc v Lake State Development Co,* 60 Mich App 175; 230 NW2d 363 (1975) (action by tenant against landlord and general contractor for negligent construction of drainage system); *George v City of Petoskey,* 55 Mich App 433; 223 NW2d 6 (1974) (action for damages to financial expectations and economic benefit arising from property ownership).

Thus, even though the present plaintiffs' personal action arises out of their property interests,

it does not make the six-year statute of limitations for personal actions automatically inapplicable. There is no dispute that the present plaintiffs no longer have any right to regain possession of the subject property, since the redemption periods following the tax sales have expired. *Rosin, supra.* Accordingly, it may be recognized that plaintiffs assert personal claims arising out of their former property ownership and based on their constitutional right to just compensation.

We are cognizant that the instant action has not been clearly provided for in any specific statute of limitations.[9] Neither do the facts of this case come within the confines of either the 15- or 3-year statute by analogy. As the plaintiffs are not seeking recovery of their lands but compensation for a taking by the sovereign, this cause of action may be logically conceptualized as a personal action which arises in relation to a former interest in real property. We thus conclude that the general six-year statute of limitations applies to this action. See *Schreiber v Lowe's, Inc,* 147 F Supp 319, 322 (WD Mich, 1957).

## II

Plaintiffs also contend that the trial court and the Court of Appeals erred in determining that their cause of action accrued on the last day of the redemption period, thereby triggering the running of the statute of limitations. We concur with the trial court and the Court of Appeals on this point.

The time of "taking" in an inverse condemna-

---

[9] Although recognizing the inverse condemnation cause of action, the Legislature did not specify a limitation period in its recently enacted Uniform Condemnation Procedures Act, 1980 PA 87, MCL 213.51 *et seq.;* MSA 8.265(1) *et seq.*

tion action is not necessarily coincidental with the
time plaintiff's cause of action accrues. *Foster* and
*Silverstein.* It is common for such actions to in-
volve a continuous wrong by the condemnor rather
than a single act. In an inverse condemnation
action such as the present one, in which plaintiffs
claim a continuous wrong by the condemnor, it is
well-settled that the statute of limitations does not
begin to run until the consequences of the condem-
nor's actions have stabilized. *Dickinson* and *Silver-
stein.* The precise point in time when the running
of the limitation period is triggered is determined
by the facts and circumstances of each case. *Foster*
and *Silverstein.*

The parties to the instant action have stipulated
that there was a de facto taking of the property
prior to the date of the tax sales. It is for the trier
of fact to determine whether a continuous wrong
was involved here and, if so, when the conse-
quences of this wrong had stabilized, thus trigger-
ing the statute of limitations. If the trier of fact
finds that the condition had stabilized prior to the
expiration of the redemption period, then that is
the date when the limitation period would begin to
run. However, if the trier of fact finds that the
condition had not yet stabilized, then the latest
point in time that plaintiffs' cause of action could
have accrued was the last date on which plaintiffs
held any interest in the subject property—the day
the right of redemption expired. *Silverstein, supra,*
335 F Supp 1309-1310. It is on this date that the
limitation period would begin to run. Clearly, if
instead of the tax sales plaintiffs had voluntarily
sold their property to third parties, they could not
claim damages which had accrued after the sale.

Accordingly, those claims in which the redemp-

tion period had expired more than six years prior to the filing of this action are barred by operation of the statute of limitations.

CONCLUSION

The proper limitation period to employ in this inverse condemnation action is the general six-year period for personal actions. MCL 600.5813; MSA 27A.5813. On the facts of this case, the latest date on which the limitation period could begin to run was on the day the right of redemption expired. Affirmed in part. Reversed in part. No costs, a public question being involved.

FITZGERALD, C.J., and WILLIAMS, COLEMAN, and RYAN, JJ., concurred.

LEVIN, J. *(concurring in part and dissenting in part)*. We agree with the majority that the "time of 'taking' in an inverse condemnation action is not necessarily coincidental with the time plaintiff's cause of action accrues",[1] that "the statute of limitations does not begin to run until the consequences of the condemnor's actions have stabilized",[2] and that it is "for the trier of fact to determine whether a continuous wrong was involved here and, if so, when the consequences of this wrong had stabilized, thus triggering the statute of limitations".[3] We further agree with the majority that such a cause of action is a personal and not a real action and that the applicable statute of limitations is the six-year statute.[4]

We do not, however, agree that "the latest point

[1] *Ante,* pp 503, 504.
[2] *Id.*
[3] *Ante,* p 504.
[4] *Ante,* pp 502-503; see *Citizens for Pretrial Justice v Goldfarb,* 415 Mich 255, 268-270; 327 NW2d 910 (1982).

in time that plaintiffs' cause of action could have accrued was the last date on which plaintiffs had any interest in the subject property—the day the right of redemption expired".[5]

The majority reasons that "if instead of the tax sales, plaintiffs had voluntarily sold their property to third parties, they could not claim damages which had accrued after the sale".[6] It may be that the plaintiffs would not be entitled to damages which would occur or accrue after such a sale, but it does not follow that the last day on which damages accrued before a sale is the date of accrual of their cause of action.

The statute governing accrual of actions in Michigan,[7] states that in a case not specifically provided for by the statute—and this is such a case[8]—"the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results".[9] Thus, a cause of action for inverse condemnation may accrue coincidentally with, before, or after the time the damage is suffered.

For purposes of the statute of limitations, the time of accrual of the cause of action for inverse condemnation depends upon when the wrong— what the city did or failed to do—"was done" with respect to the plaintiffs *and* the owners of all 1400 parcels in Elmwood III being condemned and not on whether the plaintiffs chose or had the where-

---

[5] *Ante,* p 504.

[6] *Id.*

[7] See MCL 600.5827-600.5838; MSA 27A.5827-27A.5838.

[8] The only specific accrual provision that arguably applies is MCL 600.5829; MSA 27A.5829, which sets the time of accrual for claims to recover land. We agree with the majority's rejection of analogizing inverse condemnation claims to adverse possession claims. See *ante,* pp 497–499. Therefore, MCL 600.5829; MSA 27A.5829 does not apply in this case.

[9] MCL 600.5827; MSA 27A.5827.

HART v DETROIT 507
OPINION BY LEVIN, J.

withal to pay taxes or suffered loss of their parcels
for nonpayment of taxes.

Inverse condemnation is a continuing wrong.
The time of accrual is when the situation stabilizes
or comes to rest.[10] That would be the same for all
the parcels in Elmwood III since it appears that
the rain of the malaise caused by the city's actions
and inactions which constitute an inverse condem-
nation fell more or less evenly throughout Elm-
wood III. Thus, plaintiffs' cause of action in inverse
condemnation[11] accrued at the same time that the
cause of action accrued for the owners of the other
1400 lots.[12]

---

[10] *United States v Dickinson,* 331 US 745, 749; 67 S Ct 1382; 91 L
Ed 1789 (1947).

[11] *Cf. Klopping v City of Whittier,* 8 Cal 3d 39, 58; 104 Cal Rptr 1;
500 P2d 1345 (1972) (loss of land due to tax foreclosure does not abate
inverse condemnation suit); *Sayre v United States,* 282 F Supp 175,
179 (ND Ohio, 1967) (bankruptcy trustee sought inverse condemnation
damages for alleged taking of, *inter alia,* foreclosed properties).

[12] In the instant case, the city's condemnation action named the
owners of all 1400 parcels other than the 42 foreclosed for nonpay-
ment of taxes which it had already obtained.

Although not argued, we are inclined to the view that where the
city intends to condemn property and ultimately commences an
action, it should be precluded from claiming that a cause of action for
inverse condemnation accrues before the city commences an action. It
would be intolerable for the city to claim that it can oust persons in
possession without commencing condemnation proceedings and with-
out compensation because an inverse condemnation occurred more
than six years theretofore with the result that the city already owns
the property so inversely condemned.

If the city would be precluded—as clearly it must—from making
such a claim as to persons in possession (not foreclosed for nonpay-
ment of taxes), we see no reason why a like preclusion should not bar
the city from asserting the statute of limitations as a defense against
persons who own adjoining and nearby parcels foreclosed for taxes. It
is again pertinent that the cause of action for inverse condemnation
accrues or should be deemed to accrue for all parcels similarly
affected at the same time.

Just as a government entity may not zone property to avoid the
payment of just compensation for a taking, see, *e.g., Sneed v Riverside
County,* 218 Cal App 2d 205; 32 Cal Rptr 318 (1963), and a mortgagor
cannot, at a mortgage foreclosure sale, acquire title to land free of the
lien of the mortgage, see Osborne, Mortgages (2d ed, 1970), § 177, p
304, equity should bar a city from acquiring as the result of foreclo-

Under the analysis of the majority opinion, if there are two lots side-by-side and one owner pays taxes and the other does not, the cause of action for inverse condemnation for the owner who pays taxes would accrue at a different time than for the owner who does not. That is inconsistent with the nature of the cause of action which is for the wrongful taking.

It is the conduct of the city, not the nonpayment or foreclosure for nonpayment of taxes, which gives rise to the right to bring an action for inverse condemnation. The expiration of the plaintiffs' right of redemption was not an aspect of the wrong (the inverse condemnation or taking), but a consequence of it. Foreclosure is not a compensable taking, and to reason as does the majority is to suggest that the plaintiffs may be compensated for tax foreclosure as if it were an aspect of the inverse condemnation.

In sum, the time when the cause of action accrued depends solely upon what the city did or failed to do and not at all upon the plaintiffs' reaction thereto, such as failing to pay taxes. While the plaintiffs may not be able to recover damages for diminution of the value of the property occurring after the expiration of the right of redemption,[13] the time of accrual of their personal

sure for nonpayment of taxes land it plans to condemn, free of the lien of the obligation to pay just compensation.

[13] It could be argued that the parties' stipulation that a taking occurred before the foreclosure establishes the accrual date for their cause of action. However, while the stipulation that there had been a de facto taking may be determinative that the plaintiffs suffered damages resulting from inverse condemnation prior to the loss of the property for nonpayment of taxes, it does not necessarily determine when the cause of action for inverse condemnation accrued.

Although the parties stipulated that the plaintiffs' parcels had been inversely condemned before the expiration of the right of redemption, it does not follow that the continuing wrong had ceased. By the stipulation, the parties were apparently seeking to establish that the plaintiffs had suffered a compensable wrong and, thus, had acquired a

action for condemnation is the same as the time of accrual for property owners who paid taxes.

KAVANAGH, J., concurred with LEVIN, J.

RILEY, J., took no part in the decision of this case.

personal right of action for inverse condemnation before they lost their property by foreclosure for nonpayment of taxes. While they may have intended the stipulation to cover the extent of the damages, *i.e.*, whether the entire property had been taken or only part of it, their intent in that regard does not clearly appear.