# STATE OF MICHIGAN

# COURT OF APPEALS

WOODLAND ESTATES, LLC,

Plaintiff-Appellant,

v

CITY OF STERLING HEIGHTS and COUNTY
OF MACOMB,

Defendants-Appellees.

UNPUBLISHED
December 15, 2016

No. 328617
Macomb Circuit Court
LC No. 2014-004925-CC

Before: SAAD, P.J., and METER and MURRAY, JJ.

PER CURIAM.

In this inverse condemnation action, plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(7) on statute of limitations grounds. We affirm.

## I. BACKGROUND

Plaintiff purchased a five-acre parcel of property in 2003 through a land contract. When plaintiff reached out to defendants for permission to develop the property, defendants initially denied the request, indicating that an anticipated extension of 18 Mile Road would go through plaintiff's property. Eventually, defendants decided to limit the width of the property needed, resulting in a 92-foot wide tract of land across one edge of plaintiff's property being reserved for the eventual extension of 18 Mile Road (referred to as the "right-of-way property"). According to plaintiff, this did not allow it to fully develop the subject property, requiring that an 11-unit condominium project be built rather than a 17-or-18-unit housing development. Despite already recording the land contract for the entire tract of land, plaintiff obtained a warranty deed that described only the right-of-way property.

Eventually, the parties reached an agreement to allow plaintiff to develop the non-right-of-way portion of the property, construction was completed, and all of the units were sold. Estate Homes, LLC, a company owned by the same individual that owned plaintiff, recorded the Woodland Estates Master Deed on February 6, 2006. Despite being recorded by Estate Homes, LLC, the master deed described the property purchased by land contract by plaintiff as the land on which the condominium project was to exist under the Michigan Condominium Act (MCA), MCL 559.101 *et seq*. The legal description provided by the master deed included the right-of-way property. One month later, on March 6, 2006, plaintiff recorded a "CONSENT TO

-1-

SUBMISSION OF REAL PROPERTY TO CONDOMINIUM PROJECT." In that document, plaintiff consented to the submission of all the property it had purchased by land contract to the condominium project, to be governed by the master deed. Again, the legal description in the consent to submission included the right-of-way property.

Any interaction between the parties then lay dormant until December 30, 2014, when plaintiff brought the instant action against defendants, alleging that defendants' actions amounted to a governmental taking by regulation without adequate compensation—or an inverse condemnation. As their first responsive pleadings, defendants moved the trial court to grant summary disposition in their favor pursuant to MCR 2.116(C)(7) and (C)(8). Among other reasons, defendants argued that the applicable six-year statute of limitations had expired by the time the lawsuit was filed. Plaintiff argued that not only was a statute of limitations unconstitutional when applied to a constitutional takings claim, but also the proper statute of limitations was 15 years because plaintiff still had an ownership interest in the subject property. The trial court sided with defendants, ruling that plaintiff's ownership interest in the right-of-way property was extinguished when plaintiff recorded the consent to submission, thereby requiring application of the six-year statute of limitations, which had expired. The trial court also ruled that defendants' motions for summary disposition were not premature and that application of the statute of limitations was constitutional.

## II. ANALYSIS

Plaintiff first argues that barring a constitutional takings claim pursuant to a statute of limitations is unconstitutional. Constitutional issues, including whether a given statute is constitutional, are reviewed de novo by this Court. *In re Pollack Trust*, 309 Mich App 125, 134; 867 NW2d 884 (2015). "The United States Constitution precludes the federal government from taking private property unless it is taken for a public use and with just compensation." *Blue Harvest v Dep't of Transp*, 288 Mich App 267, 277; 792 NW2d 798 (2010), citing US Const, Am V. Likewise, "the Michigan Constitution requires that '[p]rivate property shall not be taken for public use without just compensation.' " *Id.*, quoting Const 1963, art 10, § 2. Federal and state governmental entities are still able to obtain private property for public use "[t]hrough [the] power of eminent domain," but are required to provide the "requisite compensation." *Dorman v Clinton Twp*, 269 Mich App 638, 645; 714 NW2d 350 (2006). "A property owner may bring an inverse condemnation action seeking just compensation for a 'de facto taking,' when the state fails to follow [the proper] procedures." *Id.*

An inverse condemnation action is subject to one of two statutes of limitation, which differs depending on the plaintiff's ownership interest in the subject property. See *Hart v Detroit*, 416 Mich 488, 503; 331 NW2d 438 (1982). The *Hart* Court applied the general six-year statute of limitations found at MCL 600.5813,[1] to a situation where the plaintiff was alleging a governmental taking for which he was due just compensation, but he no longer had an ownership

---

[1] MCL 600.5813, in its entirety, states: "All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."

interest in the land that was taken. The Court opined, however, that it was not willing to "foreclose the possibility that on the proper facts, where a plaintiff retains ownership rights in the property when suit is brought" the 15-year statute of limitations codified at MCL 600.5801(4) might apply.[2] *Hart*, 416 Mich at 499. This Court, in *Difronzo v Village of Port Sanilac*, 166 Mich App 148, 153-154; 419 NW2d 756 (1988), relied on that language in *Hart*, and determined that where a plaintiff maintains an ownership interest in the property "that plaintiff's action is governed by the fifteen-year statute of limitations."

Turning to plaintiff's specific argument, our Supreme Court, as well as the United States Supreme Court, have held it constitutionally permissible to apply a statute of limitations to a constitutional claim. In *Hart*, 416 Mich at 494, before reaching the issue of what limitations period applies to different factual scenarios, the Court considered the argument that "due process rights guaranteed by the state and federal constitutions cannot be cut off by any statute." The Court held that, regardless of the limitations period applied, whether it be 6 or 15 years, such application to an inverse condemnation case was constitutional. *Id*. at 495-496. Decisions of the United States Supreme Court, both before and after *Hart*, have come to the same conclusion. First, in *United States v Dickinson*, 331 US 745, 747; 67 S Ct 1382; 91 L Ed 1789 (1947), although the Supreme Court was not asked to decide whether a statute of limitations being applied to a constitutional takings claim was constitutional, the Supreme Court held that such a claim was subject to a six-year statute of limitations. Second, in *Block v North Dakota ex rel Bd of Univ & Sch Lands*, 461 US 273, 292; 103 S Ct 1811; 75 L Ed 2d 840 (1983), the Supreme Court considered whether a constitutional claim can be restricted by a statute of limitations, with the Court holding that "[a] constitutional claim can become time-barred just as any other claim can[,]" because "[n]othing in the Constitution requires otherwise." *Id*., citing *Bd of Regents v Tomanio*, 446 US 478; 100 S Ct 1790; 64 L Ed 2d 440 (1980) (holding that "federal court were obligated . . . to apply the [] New York statute of limitations to respondent's federal constitutional claims[.]"); *Soriano v United States*, 352 US 270; 77 S Ct 269; 1 L Ed 2d 306 (1957). Indeed, this Court recently held that "Michigan courts routinely enforce statutes of limitations where constitutional claims are at issue." *Rusha v Dep't of Corrections*, 307 Mich App 300, 311; 859 NW2d 735 (2014). In light of these decisions, we reject plaintiff's argument

---

[2] MCL 600.5801(4), in its entirety, states:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

> \* \* \*

> (4) **Other cases**. In all other cases under this section, the period of limitation is 15 years.

and conclude that applying the statute of limitations to an inverse condemnation claim is constitutional. *Hart*, 416 Mich at 495-496.[3]

Next, plaintiff argues that the trial court should have applied the 15-year statute of limitations because plaintiff still had an interest in the subject property. We disagree. "This Court reviews motions for summary disposition under MCR 2.116(C)(7) de novo." *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007). "Summary disposition may be granted under MCR 2.116(C)(7) when a statute of limitations bars a claim." *In re Pollack Trust*, 309 Mich App at 134. "In reviewing a ruling pursuant to subrule (C)(7), '[w]e consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them.' " *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432-433; 824 NW2d 318 (2012), quoting *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001). "Whether a cause of action is barred by a statute of limitations is a question of law, which we review de novo." *Collins v Comerica Bank*, 468 Mich 628, 631; 664 NW2d 713 (2003).

As noted earlier, the proper statute of limitations for an inverse condemnation claim is either six years pursuant to MCL 600.5813 and *Hart*, 416 Mich at 503, where the plaintiff does not maintain an interest in the property, or 15 years pursuant to MCL 600.5801(4) and *Difronzo*, 166 Mich App at 153-154, where the plaintiff does maintain an ownership interest. "In an inverse condemnation action such as the present one, in which plaintiff[] claim[s] a continuous wrong by the condemnor, it is well-settled that the statute of limitations does not begin to run until the consequences of the condemnor's actions have stabilized." *Hart*, 416 Mich at 504. In order to determine when the consequences have stabilized, this Court must consider "the facts and circumstances of each case." *Id.*

Plaintiff purchased the subject property, which included the right-of-way property, through a land contract in October of 2003. That five-acre tract of land was given one parcel number for tax identification purposes. In 2005, plaintiff received a warranty deed for land that is undisputedly the right-of-way property. The warranty deed included the same parcel number as the land contract, but indicated that it was only "part of" that parcel number. Plaintiff received both the land contract (that included the right-of-way property pursuant to the legal description) and the warranty deed (that included *only* the right of way property) from the same seller. The warranty deed indicated that the right-of-way property was approximately 1.12 acres.

Later, in February of 2006, Estate Homes recorded the master deed for the Woodland Estates Condominium project. The legal description of the property that was included in the master deed was the same as the legal description that plaintiff received via the land contract. The master deed noted that it did not include various easements that were on the property, but it

---

[3] Plaintiff's reliance on the United States Bankruptcy Court's decision in *In re Detroit*, 524 BR 147, 268-269 (ED Mich, 2014), is misplaced because that court was not considering the application of a statute of limitations to a constitutional taking claim, but rather, was considering whether Detroit, a governmental entity, was permitted to avoid payment of just compensation by simply filing for chapter 9 bankruptcy.

did not specifically reference the right-of-way property, and further, the calculation of the acreage of the land not including those easements was not small enough to account for removing the 1.12-acre right-of-way land.

Additionally, approximately one month after the master deed was recorded, plaintiff recorded a consent to submission of land subject to the master deed. The consent to submission noted that plaintiff had an interest in the property, but that it was giving consent for that property to be governed by the master deed. The property described in the consent to submission matched the legal description of the property that plaintiff purchased by land contract. The consent to submission did not contain any indication that plaintiff intended to withhold the right-of-way property from being submitted to the condominium project pursuant to the master deed.

Plaintiff argues that the existence of the warranty deed creates a question of fact regarding its ownership interest, while defendants argue that the property was included in the condominium project, and therefore, was governed by the master deed and owned by the unit owners. Pursuant to the MCA, a "condominium project" is defined as "a plan or project consisting of not less than 2 condominium units established in conformance with this act." MCL 559.104(1). Under the MCA, condominium projects are made up of only two things: condominium units and common elements. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 146; 783 NW2d 133 (2010). "The MCA defines 'condominium unit' as 'that portion of the condominium project designed and intended for separate ownership and use, as described in the master deed, regardless of whether it is intended for residential, office, industrial, business, recreational, use as a time-share unit, or any other type of use.' " *Id*. at 142, quoting MCL 559.104(3). A condominium project is owned by a group of "co-owners," which is defined under the MCA as any "legal entity . . . who owns a condominium unit within the project." MCL 559.106(1).

According to the MCA, a master deed can delineate ownership in the common elements amongst the co-owners of the condominium project either by specific percentages allocated to each unit or equally among all co-owners. MCL 559.137(1) and (2). The master deed in this case states that the common elements are owned equally amongst the co-owners. Under certain circumstances, a condominium project developer can reserve the option to remove portions of the land dedicated to the condominium project. MCL 559.133. However, that reservation by the developer must be "explicit," MCL 559.133(a), and must also provide for "restrictions . . . including, without limitation, a statement as to whether the consent of any co-owners are required[.]" MCL 559.133(b). Further, the expression of the right to reserve property must also include a time limit, not to exceed "6 years after the recording of the master deed," as well as a "general description of the land which may be withdrawn from the condominium project." MCL 559.133(c) and (d).

The master deed in the present case, in accordance with the MCA, states that all of the property described in the legal description is either a unit or a common element. The legal description of the property also matched the description included in the original land contract, which undisputedly included the right-of-way property. The master deed contained no clause or section that sought to set aside the right-of-way portion of the property or to reserve that property

-5-

to the developer or plaintiff. Rather, the whole tract of property was included in the master deed.[4] Plaintiff's argument that the right-of-way property was not included as part of the master deed, because it was part of the various easements that were removed, is belied by the legal description in the master deed, which did not remove sufficient easement property to conceivably account for the right-of-way property. Furthermore, the language of the master deed never referenced the right-of-way property by name, nor did the master deed comply with the requirements of MCL 559.133.

The master deed was recorded by Estate Homes, LLC, which did not have an ownership interest in the subject property, according to the deeds on record. However, plaintiff cured this issue by recording a consent to submission of the land to the condominium project. Once again, the land described in the consent to submission included the whole parcel of land plaintiff purchased by land contract, and there was no indication that plaintiff intended to keep the right-of-way property separate from the other land. Indeed, the consent to submission indicated that plaintiff acknowledged and accepted that the property which it owned was now going to be governed by the master deed.

Finally, the master deed defined the "common elements" of the Woodland Estates Condominiums as "both the General and Limited Common Elements described in Article IV hereof." Turning to Article IV of the master deed, a "General Common Element" included "[t]he land described in [the legal description], including roadways, hereof not identified as Limited Common Elements." Those "Limited Common Elements" included only such things as patios, porches, garages, air conditioners, and the like. In other words, because the right-of-way property was not a patio, porch, unit, or the like, it was a general common element. And, pursuant to both the master deed and the MCA, general common elements are owned equally among the unit-owners. MCL 559.137. It is undisputed that plaintiff does not own a unit in the Woodland Estates Condominium. Therefore, when plaintiff's land was submitted as part of the master deed and condominium project, the right-of-way property became a common element, and was then owned equally amongst the unit-owners pursuant to the master deed.

Where a party does not have an ownership interest in the land subject to an inverse condemnation claim, the statute of limitations is six years. *Hart*, 416 Mich at 503. The last event before the commencement of suit was plaintiff's filing of the consent to submission in March of 2006. Using that as the latest possible date of when the action accrued, because that is the last possible date when the "consequences of the condemnor's actions have stabilized," the statute of limitations expired in March of 2012. *Id*. at 504. Therefore, the trial court properly determined that the statute of limitations barred plaintiff's claims and summary disposition pursuant to MCR 2.116(C)(7) was appropriate. See *id*.

---

[4]If the master deed had left out the right-of-way property, the master deed would have described a parcel of land that was, at largest, 3.88 acres. This is because the original tract of land was 5 acres, and the right-of-way property was 1.12 acres. However, the master deed reveals a tract of property that was 5 acres in size, or when the various easements were removed, 4.38 acres.

-6-

Lastly, plaintiff argues that the trial court erred by citing MCR 2.116(C)(10) in its opinion and order granting summary disposition in favor of defendants, because it was premature where discovery had yet to take place and the trial court was limited to considering plaintiff's well-pleaded complaint. Although the trial court should not have relied upon (C)(10) in deciding the motion, the trial court did not prematurely decide the motion.

"On appeal, a trial court's grant or denial of summary disposition will be reviewed de novo." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 259 Mich App 315, 324; 675 NW2d 271 (2003). Pursuant to MCR 2.116(D)(2), a motion for summary disposition pursuant to MCR 2.116(C)(7) may be brought "prior to the party's first responsive pleading." Even though the motion may be brought before discovery takes place, this Court must " 'consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them.' " *Seldon*, 297 Mich App at 432-433, quoting *Fane*, 465 Mich at 74. "If there is no factual dispute, whether a plaintiff's claim is barred under the applicable statute of limitations is a matter of law for the court to determine." *Kincaid v Cardwell*, 300 Mich App 513, 523; 834 NW2d 122 (2013). Where there is a factual dispute, however, that "factual dispute must be submitted to the jury." *Id*.

Here, defendants properly moved the trial court for summary disposition pursuant to MCR 2.116(C)(7) on the grounds that plaintiff's claim was barred by the applicable statute of limitations. In deciding that motion, the trial court was required to consider whether plaintiff still maintained a property interest in the subject property. The material facts were undisputed, and revealed that plaintiff had no interest in the right-of-way property after recording the consent to submission in March of 2006. Therefore, the trial court's determination that there was no genuine issue of material fact regarding an ownership interest by plaintiff was appropriate as related to the ultimate issue of which statute of limitations to apply. See *Kincaid*, 300 Mich App at 523. Summary disposition was therefore properly granted pursuant to MCR 2.116(C)(7).

Affirmed. Defendants may tax costs, having prevailed in full. MCR 8.219(A).


/s/ Henry William Saad
/s/ Patrick M. Meter
/s/ Christopher M. Murray